COURT OF APPEALS OF VIRGINIA

Present:  Judges Baker, Coleman and Elder
Argued at Salem, Virginia


JEROME ANTONIO DOSS
                                             OPINION BY
v.        Record No. 2209-95-3     JUDGE SAM W. COLEMAN III
                                           DECEMBER 31, 1996
COMMONWEALTH OF VIRGINIA

              FROM THE CIRCUIT COURT OF THE CITY OF ROANOKE
                     Robert P. Doherty, Jr., Judge

              Jonathan M. Apgar (Damico & Apgar, on brief),
              for appellant.

              John K. Byrum, Jr., Assistant Attorney
              General (James S. Gilmore, III, Attorney
              General, on brief), for appellee.


       The defendant was convicted in a bench trial of malicious

wounding and use of a firearm in the commission of malicious

wounding.  On appeal, he contends that (1) the evidence was

insufficient to prove malicious wounding, and (2) the trial judge

violated his Fourteenth Amendment due process and Fifth Amendment

self-incrimination protections by conditioning the suspension of

the penitentiary sentence upon his surrendering the handgun he

used to commit the offenses, which he had testified he did not

possess.  We find no error and affirm the convictions and

sentences.

                      SUFFICIENCY OF EVIDENCE

       On May 16, 1995, Ralph Fuller visited his two infant

children and their mother, Michelle Price, at Price's apartment

in Roanoke.  During the visit, Fuller intervened in an argument

between Price and Ingrid Doss, the defendant's sister.  After the argument, Doss left the apartment but returned a short time later with the defendant.

The defendant demanded to know "why [Fuller] was disrespecting [his] sister" and he began to argue with Fuller. Fuller testified that during the argument, he told the defendant to leave and pushed the defendant out the door.  The defendant left, but returned later and, according to Fuller, entered the apartment holding what appeared to be an automatic handgun. Fuller confronted the defendant and they began to fight, pushing and hitting each other.  The defendant's blows caused Fuller to bend forward at the waist.  While bent forward, Fuller heard a gunshot and realized that he had been shot.

Fuller testified that he saw the gun the defendant had been holding pointed at him when he was shot.  Fuller acknowledged that he did not "know what [the defendant] was doing at the time [he] was bent over."  On redirect examination, Fuller was questioned and testified as follows:

> Q:  When you were in a crouched
>     position, you said you were bent
>     over when you were shot or
>     immediately before you got shot,
>     was that a result of being struck?
>      Bent over because you were struck?
>
> A:  No, I . . . was . . . was . . .
>     already bent over.  And I don't
>     know if on the way down maybe I
>     might have discharged it, my body
>     might have discharged it or what.
>     All I know is I remember getting
>     hit.

- 2 -

```
Q:    You mean when you went over, you
      may have hit his hand?

A:    I . . . I might have hit it and
      caused it.  I just remember getting
      hit.
```

After being shot, Fuller retrieved a .38 caliber revolver from near the couch and fired a shot at the defendant as he fled. Fuller testified that after shooting at the defendant he dropped the .38 revolver outside the apartment and had not seen the gun since that night.

Officer F. L. Pledge responded to the scene.  He found Fuller with a bullet wound in his upper left chest.  Officer Pledge testified that Fuller stated "that some guys came up -- rushed him -- came to his house and rushed him and shot him." Officer Pledge searched the apartment and found one shell casing that was identified as a .38 caliber casing.

Ingrid Doss testified on behalf of the defendant.  She stated that the defendant did not have a gun when he went to Price's apartment to confront Fuller.  Michelle Price also testified that the defendant was unarmed when he came to the apartment but that Fuller had a .38 caliber handgun.  According to Price, Fuller's gun discharged while Fuller was struggling with the defendant.  Price testified that Fuller was holding the gun when it fired.

Price was impeached by evidence that she had made prior inconsistent statements in her initial report to the police in which she gave an account of events that contradicted her trial

testimony. When the police arrived after the shooting, Price told Officer Pledge that the defendant was armed when he came to the apartment, that he was accompanied by a man named Chris Graves, and that the defendant shot Fuller. She reported that the defendant kicked in the door to her apartment and rushed in with a gun in his hand, that Fuller attempted to take the gun from the defendant, and that the defendant struck Fuller with the gun. She said the defendant then "stepped back [from Fuller], cocked the handle back, [and] fired [one] shot towards [Fuller]."

At trial, Price testified that she had lied when she gave her statement to the police. She explained that she was afraid she would be evicted from her apartment if her landlord discovered she had allowed Fuller to keep a gun in the home. Price conceded that she did not know what Fuller had told the police when she gave her initial statements. Although Price's prior statement could only be used to impeach her testimony, and not for its truth, the inconsistency in her statements was one of the reasons the trial judge disbelieved her testimony and the other witnesses' accounts of how the shooting occurred.

Testifying on his own behalf, the defendant denied that he had a gun when he went to Price's apartment. He testified that Fuller produced a gun, and "[t]he gun went off" while he was wrestling with Fuller.

The trial judge found that the testimony of the defense witnesses was incredible and contrary to the physical evidence.

- 4 -

The judge found that Fuller's testimony as to how the shooting occurred was consistent with the physical evidence. Specifically, the trial judge found that the location of Fuller's wound and the fact that a shell casing was recovered were consistent with Fuller's account that the defendant used an automatic pistol that ejected spent shells, rather than the defendant's account that Fuller was shot by his own revolver, a gun that does not eject spent shells.

Even though the trial judge accepted the victim's version of how the shooting occurred, the defendant contends that the evidence tended to prove the shooting was accidental rather than intentional and, therefore, the evidence was insufficient to prove beyond a reasonable doubt that the shooting was malicious. On appeal we view the evidence in the light most favorable to the prevailing party and grant to it all reasonable inferences fairly deducible therefrom. Higginbotham v. Commonwealth, 216 Va. 349, 352, 218 S.E.2d 534, 537 (1975). The fact finder is not required to believe testimony that is inconsistent with the facts, may reject testimony that has been impeached, and may rely solely upon circumstantial evidence to prove an offense, provided the circumstances point unerringly to prove the necessary elements of the offense. Cook v. Commonwealth, 226 Va. 427, 433, 309 S.E.2d 325, 329 (1983); Kirby v. Commonwealth, 19 Va. App. 332, 336, 451 S.E.2d 53, 56 (1994).

The trial judge expressly found that the defense witnesses

were not credible.  Based upon the prior inconsistent accounts that the witnesses gave to the police the night of the shooting, which accounts were contrary to the trial testimony and the circumstances surrounding the shooting, the judge's credibility determination was clearly supported by the evidence.  Likewise, the trial judge was justified in disbelieving and disregarding the defendant's account that he was unarmed, that the victim was armed, and that the victim's gun discharged while they were scuffling.

Whether an appellant acted with malice is a question of fact to be determined by the fact finder.  Branch v. Commonwealth, 14 Va. App. 836, 841, 419 S.E.2d 422, 426 (1992).  "Malice inheres in the doing of a wrongful act intentionally, or without just cause or excuse, or as a result of ill will.  It may be directly evidenced by words, or inferred from acts and conduct which necessarily result in injury."  Hernandez v. Commonwealth, 15 Va. App. 626, 631, 426 S.E.2d 137, 140 (1993) (quoting Christian v. Commonwealth, 221 Va. 1078, 1081, 277 S.E.2d 205, 207 (1981)); Bell v. Commonwealth, 11 Va. App. 530, 533, 399 S.E.2d 450, 452 (1991) (quoting Long v. Commonwealth, 8 Va. App. 194, 198, 379 S.E.2d 473, 475-76 (1989)).  "Malice is implied from any willful, deliberate and cruel act against another."  Williams v. Commonwealth, 13 Va. App. 393, 398, 412 S.E.2d 202, 205 (1991).

"Implied malice exists when any purposeful, cruel act is committed by one individual against another without any, or

- 6 -

without great provocation . . . ." Pugh v. Commonwealth, 223 Va. 663, 668, 292 S.E.2d 339, 341 (1982). Malice may be inferred "from the deliberate use of a deadly weapon." Perricllia v. Commonwealth, 229 Va. 85, 91, 326 S.E.2d 679, 683 (1985).

When viewed in the light most favorable to the Commonwealth, the evidence proved that the defendant, after engaging in an argument with the victim, left the home where the victim was staying, armed himself, returned with a companion, broke through the door, "rushed [the victim] . . . and shot him." According to the victim's testimony, the defendant struck him and while he was bending over, the defendant shot him. The circumstances support the trial judge's finding that the defendant deliberately and willfully discharged the firearm and shot Fuller. In weighing Fuller's redirect examination, in which he acknowledged that he was not looking directly at the appellant when the gun was discharged and he testified, "I might have hit it and caused it," the judge was justified in finding that the appellant had intentionally armed himself, had forcibly entered the residence where the victim was, had intentionally assaulted the victim, and had intentionally aimed the gun at the victim at the time it was discharged. Based on the circumstances leading up to and following the shooting, the trial judge, as fact finder, was justified in finding that the defendant deliberately and maliciously shot the victim.

## SENTENCING

### SELF-INCRIMINATION AND DUE PROCESS

At the sentencing phase of the trial, the judge sentenced the defendant to twenty years on the malicious wounding charge and three years on the firearm charge. However, the judge continued the sentencing hearing to a later date to consider whether to suspend a portion of the malicious wounding sentence. The judge informed the defendant that "[a]t that time, [he] would be anxious to learn whether or not [the defendant was] willing to turn in [the] weapon" used in the shooting. The defendant objected to the "condition" that he claims the judge imposed -- production of the handgun -- as prerequisite to suspending sentence. The appellant maintained at trial and the sentencing hearing that he had never possessed a gun. At the continuation of the sentencing hearing, the defendant did not produce a handgun. Nevertheless, the judge suspended eight years of the twenty-year sentence for malicious wounding.

The defendant claims that requiring him to produce a firearm in order to receive a suspended sentence was tantamount to requiring him to admit that he perjured himself at trial or suffer the penalty of lengthy imprisonment. The defendant argues that the procedure violated his right not to give evidence that would incriminate him because it placed him in the untenable position of making a Hobson's choice between perjuring himself by relinquishing a gun that he had testified did not exist, or not receiving a suspended sentence. We reject the defendant's claim that the judge's "condition" for suspending sentence violated his

Fourteenth Amendment due process rights and Fifth Amendment self-incrimination protection.

The Fifth Amendment provides, in pertinent part, that no person "shall be compelled in any criminal case to be a witness against himself."  This privilege extends, not only to the guilt phase of a criminal trial, but also to the sentencing phase.  See Estelle v. Smith, 451 U.S. 454, 462-63 (1981).  "The Fifth Amendment does not insulate a defendant from all 'difficult choices' that are presented during the course of criminal proceedings, or even from all choices that burden the exercise or encourage waiver of the Fifth Amendment's right against self-incrimination."  United States v. Frazier, 971 F.2d 1076, 1080 (4th Cir. 1992), cert. denied, 506 U.S. 1071 (1993).  "[N]ot every burden on the exercise of a constitutional right, and not every pressure or encouragement to waive such a right, is invalid."  Corbitt v. New Jersey, 439 U.S. 212, 218 (1978).

On this record, it is apparent that either the defendant and defense witnesses testified falsely or the victim testified falsely.  The trial judge made a credibility finding that the defense witnesses, including the defendant, were not credible. At the sentencing hearing at which the trial judge would consider whether to suspend sentence, the defendant was confronted with a choice which confronts every defendant under our system of jurisprudence -- to testify truthfully or not testify at all. Although the trial judge purportedly made the request as a

- 9 -

condition of receiving a suspended sentence, the defendant was not required to testify and he was not compelled to give incriminating evidence. Placing the defendant in a position of relinquishing the instrumentality of a crime to which he had been found guilty, in order to receive a suspended sentence, is a choice that did not impermissibly burden the defendant's privilege against self-incrimination.

In United States v. Frazier, the Fourth Circuit held that presenting a criminal defendant with a choice between giving incriminating information at the sentencing phase in order to receive a reduction in sentence or exercising the right to remain silent and forego a sentence reduction does not violate the Fifth Amendment. Frazier, 971 F.2d at 1082. In Frazier, the Fourth Circuit held that offering leniency in sentencing in exchange for potentially incriminating testimony is "constitutionally indistinguishable" from the line of United States Supreme Court cases which holds that a state may encourage guilty pleas by offering either the possibility or certainty of a lesser penalty than the sentence that would be recommended if the defendant went to trial; that line of cases holds that the guilty plea procedure does not violate the defendant's Fifth Amendment rights against self-incrimination. See id. at 1084. We find this reasoning to be persuasive in this case. A trial court may refuse to suspend the sentence of a defendant who maintains his innocence because the defendant fails to show remorse, refuses to admit

his complicity, or refuses to relinquish the fruits or instrumentation of a crime for which he has been convicted, without violating the defendant's privilege against self-incrimination.

Moreover, in this case the defendant had waived his privilege against self-incrimination as to the matters pertaining to the charged offense by testifying as to the relevant and material issue about whether he possessed and used a gun.  Nestle v. Commonwealth, 22 Va. App. 336, 346, 470 S.E.2d 133, 138 (1996).  When he testified at trial that he did not bring a gun to the apartment, he waived his right to refuse to give evidence concerning the existence and location of the gun.  The prosecutor and the judge as fact finder were entitled to, and did, examine the defendant about the gun during the guilt and sentencing phases of the trial.  By testifying about the gun, the defendant waived his right to refuse to give evidence upon the subject in this criminal proceeding.  He cannot revoke that waiver at the sentencing hearing where the trial court is considering whether to suspend sentence.  Because the defendant could be required to testify about the gun, he could be asked about the location and asked to produce the gun.  Therefore, the judge's procedure did not violate the defendant's Fifth Amendment rights by requiring the defendant to give evidence on an issue that was protected by the privilege; the defendant had waived the privilege.

As to the defendant's claim that his due process rights were

violated by being required to produce a firearm or not have his prison sentence suspended, a trial judge has broad discretion in determining whether to suspend all or any portion of a penitentiary sentence.  Bell v. Commonwealth, 18 Va. App. 146, 148, 442 S.E.2d 427, 428 (1994); Hudson v. Commonwealth, 10 Va. App. 158, 160-61, 390 S.E.2d 509, 510 (1990); Duncan v. Commonwealth, 2 Va. App. 342, 345, 343 S.E.2d 392, 394 (1986).  We will not disturb a trial court's decision not to suspend sentence absent a clear abuse of discretion.  Bassett v. Commonwealth, 13 Va. App. 580, 583, 414 S.E.2d 419, 420 (1992).  Here, the defendant cannot be heard to complain that the trial judge did not consider suspending sentence where the judge suspended eight years of the twenty-year sentence.

For the foregoing reasons, we affirm the convictions.

<u>Affirmed.</u>