COURT OF APPEALS OF VIRGINIA


Present: Judges Benton, Bumgardner and Frank
Argued at Richmond, Virginia


GARY LAMONT WALKER

MEMORANDUM OPINION[*] BY
v.    Record No. 1200-98-2    JUDGE JAMES W. BENTON, JR.
JUNE 15, 1999
COMMONWEALTH OF VIRGINIA

FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
Robert W. Duling, Judge

Gregory W. Franklin, Assistant Public
Defender (David J. Johnson, Public Defender,
on brief), for appellant.

Steven A. Witmer, Assistant Attorney General
(Mark L. Earley, Attorney General, on brief),
for appellee.


A jury convicted Gary Lamont Walker of second degree murder

and use of a firearm in the commission of murder.  Walker contends

(1) that the trial judge erred in refusing to give the jury an

instruction explaining the effect of heat of passion and (2) that

the evidence was insufficient to prove second degree murder.  For

the reasons that follow, we affirm the convictions.

I.

Steve Stevenson testified that on the evening of October 28,

1997, he, Gary Lamont Walker, and Ruan King were drinking beer and

"hanging around" with several people outside an apartment

---

*Pursuant to Code § 17.1-413, recodifying Code § 17-116.010, this opinion is not designated for publication.

building.  Walker was "playing with" a 9mm pistol he had purchased that day.  Stevenson, who had been shot about six months earlier, became nervous and repeatedly asked Walker to put the gun away. Stevenson testified that Walker put the gun away but then "just snapped" and began to argue with Stevenson.  As Stevenson and Walker argued, Walker began referring to Stevenson, King, and the others in a harsh and profane manner.  When King objected, Walker told him, "You need to just shut up."  Walker then cursed, removed the gun from his pocket, and shot King twice, from a distance of five to six feet.  The first shot hit King in the arm, the second in the chest.  Walker then said "Ya'll . . . don't know me," paced around the men, and walked away.

After the shooting, Stevenson backed away until Walker left the area.  Stevenson then lifted King's shirt to see where King had been shot, removed keys from King's pocket, and telephoned for help.  Later that night, after informing King's parents of the shooting, Stevenson told the police what had happened.  The autopsy report established that King's blood alcohol level was .12% by weight by volume and urine alcohol level was .17% by weight by volume.

Stevenson testified that the shooting shocked him because there was no physical contact between King and Walker before the shooting.  Stevenson had known King for several years and was his friend.  He had known Walker for several months and occasionally

-

"hung out" with Walker. Stevenson testified that he had not known of any enmity existing between King and Walker.

In his defense, Walker offered the testimony of six-year-old William Scott. The child's mother, Wanda Scott, lived with Walker and is the mother of Walker's child. The child testified that he knew Walker, King, and Stevenson, and saw them from the second floor of his mother's apartment. He testified that he saw King "fighting with [Walker] and playing." He said they were joking and kidding, and he characterized the encounter as "play fighting." He testified that King put Walker in a "headlock" and that Walker "wiggled" to get loose. Once loose, Walker shot King twice. He further testified that he saw Stevenson take keys and a gun from King's pocket after Walker shot King.

Wanda Scott testified that King was intoxicated when she saw him that evening. She testified that after she heard gunshots outside, she opened the door to Stevenson who wanted her to telephone 911 because King had been shot. She also testified that she saw Walker walk away and that she saw Stevenson lift King's shirt and take King's keys. She testified that Stevenson took something else out of King's pocket and put it under his arm. She admitted, however, that she did not tell the police she saw Stevenson take those items. When interviewed by the police after the shooting, she said only that Stevenson came to the door and said King had been shot.

-

In the Commonwealth's case-in-rebuttal, Stevenson denied that Walker and King were "playing or tussling" or that King ever touched Walker.  He also denied that King had a gun or that he removed a gun from King's clothing.  He testified that he removed King's car keys so that he could drive King's nephew home.

At the conclusion of the evidence, the jury convicted Walker of murder in the second degree and use of a firearm in the commission of murder.  This appeal followed.

II.

Walker contends the trial judge erroneously refused to give the jury the following instruction:

> If, upon being assaulted, the passion of the
> assaulted person becomes greatly excited,
> and under that impulse, he kills his
> attacker with a deadly weapon, the offense
> is manslaughter.

The Commonwealth argues that the instruction was redundant of instructions already given.  We agree with the Commonwealth's argument.

"If the principles set forth in a proposed instruction are fully and fairly covered in other instructions that have been granted, a trial [judge] does not abuse [his or her] discretion in refusing to grant a repetitious instruction."  Joseph v. Commonwealth, 249 Va. 78, 90, 452 S.E.2d 862, 870 (1995).  The record establishes that the trial judge granted instructions that included the following language:

-

INSTRUCTION NO. 9

*     *     *     *     *     *     *

Heat of passion excludes malice when that heat of passion arises from provocation that reasonably produces an emotional state of mind such as hot blood, rage, anger, resentment, terror or fear so as to demonstrate an absence of deliberate design to kill, or to cause one to act on impulse without conscious reflection.  Heat of passion must be determined from circumstances as they appeared to defendant but those circumstances must be such as would have aroused heat of passion in a reasonable person. . . .


INSTRUCTION NO. 11

*     *     *     *     *     *     *

If you find from the evidence that the Commonwealth has failed to prove beyond a reasonable doubt that the killing was malicious but that the Commonwealth has proven beyond a reasonable doubt that the defendant killed Raun M. King and further:

(1) That the killing was the result of an intentional act; and

(2) That the killing was committed while in the sudden heat of passion upon reasonable provocation;

then you shall find the defendant guilty of voluntary manslaughter. . . .


INSTRUCTION NO. 15

Where homicide is committed in course of sudden quarrel, or mutual combat, or upon sudden provocation, and the killing is from sudden passion growing out of the quarrel, or combat, or provocation, it is not murder, but is voluntary manslaughter.

-

In its entirety, granted Instruction 9 fully and fairly covered the principles of heat of passion and malice. Granted Instruction 11 addressed the elements of first degree murder, second degree murder, and manslaughter. In addition, granted Instruction 15 addressed the principles of heat of passion and voluntary manslaughter. Walker's instruction essentially covered the same legal principles as those contained in the granted instructions. We also note that the language of Walker's instruction, which was taken from the text of Moxley v. Commonwealth, 195 Va. 151, 158, 77 S.E.2d 389, 393 (1953), omits the qualification that the use of the weapon be "justified by the nature of the assault." Id. Therefore, we hold that the trial judge did not abuse his discretion in refusing to grant Walker's proffered instruction.

### III.

"Second degree murder is defined as a 'malicious killing' of another person." Lynn v. Commonwealth, 27 Va. App. 336, 351, 499 S.E.2d 1, 8 (1998) (citation omitted), aff'd, 257 Va. 239, ___ S.E.2d ___ (1999). "Whether or not an accused acted with malice is generally a question of fact and may be proved by circumstantial evidence." Canipe v. Commonwealth, 25 Va. App. 629, 642, 491 S.E.2d 747, 753 (1997). The trier of fact may infer malice "from 'conduct likely to cause death or great bodily harm, willfully or purposefully undertaken.'" Id. (citation omitted). Thus, in appropriate circumstances,

-

"[m]alice may be inferred 'from the deliberate use of a deadly weapon.'"  Doss v. Commonwealth, 23 Va. App. 679, 686, 479 S.E.2d 92, 96 (1996) (citation omitted).

When a challenge is made on appeal to the sufficiency of evidence, "we review the evidence in the light most favorable to the Commonwealth, granting to it all reasonable inferences fairly deducible therefrom."  Martin v. Commonwealth, 4 Va. App. 438, 443, 358 S.E.2d 415, 418 (1987).  So viewed, Stevenson's testimony established that he was an eyewitness to the events surrounding the killing.  Stevenson testified that he repeatedly asked Walker to put the gun away when Walker was "playing" with the gun, "cocking it back."  As Walker and Stevenson argued, Walker called Stevenson and King derogatory names and then shot King twice.  Stevenson denied that Walker and King had physical contact before the shooting occurred.

The jury believed Stevenson's testimony regarding the incident.  "The credibility of the witnesses and the weight accorded the evidence are matters solely for the fact finder who has the opportunity to see and hear that evidence as it is presented."  Sandoval v. Commonwealth, 20 Va. App. 133, 138, 455 S.E.2d 730, 732 (1995).  Stevenson's testimony was competent and was not inherently incredible.  Further, even assuming that the jury accepted the child's testimony regarding the incident, the jury could reasonably find that Walker did not act in the heat of passion.  The child's testimony established that Walker

-

responded to "play fighting" by deliberately shooting King twice with a deadly weapon.

From the evidence of Walker's anger and deliberate use of a deadly weapon, the jury could conclude beyond a reasonable doubt that Walker acted with malice and intentionally shot King "without legal justification or excuse." Williams v. Commonwealth, 13 Va. App. 393, 398, 412 S.E.2d 202, 205 (1991). See also Diffendal v. Commonwealth, 8 Va. App. 417, 421, 382 S.E.2d 24, 26 (1989) (holding that the amount of force used always must be reasonable in relation to the harm threatened). Therefore, we hold that the evidence was sufficient to prove beyond a reasonable doubt that Walker committed second degree murder.

Accordingly, we affirm the convictions for second degree murder and use of a firearm in the commission of murder. Because, however, the record reflects that the trial judge entered a final conviction order stating erroneously that the jury convicted Walker of first degree murder, we remand this matter to the trial judge for the sole purpose of correcting the final order.

Affirmed and remanded.