COURT OF APPEALS OF VIRGINIA

Present:   Judges Benton, Humphreys and Senior Judge Hodges
Argued at Chesapeake, Virginia


TEMEAKA M. HARRIS

                                                    MEMORANDUM OPINION* BY
v.        Record No. 2083-02-1                      JUDGE WILLIAM H. HODGES
                                                    DECEMBER 9, 2003
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF NEWPORT NEWS
Randolph T. West, Judge

Theophlise L. Twitty (Jones & Twitty, on brief), for appellant.

Paul C. Galanides, Assistant Attorney General (Jerry W. Kilgore,
Attorney General, on brief), for appellee.


Temeaka Harris (appellant) contends the evidence was insufficient to support her conviction

of maiming.  Specifically, appellant argues that the evidence failed to prove she possessed and

used a weapon and failed to prove the victim saw appellant stab or cut her.  We disagree, and

affirm the conviction.

"On appeal, 'we review the evidence in the light most favorable to the Commonwealth,

granting to it all reasonable inferences fairly deducible therefrom.'" Archer v. Commonwealth,

26 Va. App. 1, 11, 492 S.E.2d 826, 831 (1997) (citation omitted).  So viewed, the evidence

proved that appellant's companion, Katina Woodson, approached Venus King in a nightclub,

made comments to King and repeatedly thrust "a plastic rose" in King's face.  Appellant

approached King's companion, Tina Harmon, and "hit" Harmon in the face "with [a] beer

bottle."  Security personnel immediately removed appellant and Woodson from the club.  King

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

and Harmon decided to report the attack to the police. A short time after appellant and Woodson had been ejected the club closed. King and Harmon proceeded to King's vehicle in the parking lot.

In the parking lot, appellant, Woodson and a third, unidentified female "came rushing up to" Harmon and King. Harmon pushed King out of the way, so King could start her vehicle, and confronted the three onrushing attackers. Appellant, Woodson and their unidentified companion "started tussling [with Harmon] and all of a sudden a guy came from nowhere and just hit Tina Harmon." Appellant, Woodson and the third female then attacked King. King testified that, among her many injuries, she sustained a deep cut on her breast with "something really sharp." The wound "cut a main artery" requiring seventeen stitches "inside and outside" to close the wound. King identified appellant as the person who cut her. She explained that appellant "was the only one directly in front of [her]." Woodson "was to [King's] right" and appellant "was right in front of" King when King felt a "sharp pain" just "before [she] hit the ground." King then fell to the ground and assumed a fetal position as her attackers continued to kick and hit her.

The police arrived, and the attackers entered a vehicle. As an officer approached the vehicle containing appellant, Woodson and the others, appellant shouted at King, "'That's what you get for taking up for Bonnie.'" King explained that Bonnie was "one of [appellant's and Woodson's] former girlfriends" who is now friendly with King. King unequivocally denied attacking appellant and her friends at any time.

Harmon corroborated King's account of the events inside the club. Harmon also described how four females "bum-rushed" and attacked her and King in the parking lot. Harmon also denied being the aggressor in the incidents.

Officer Cook arrived at the scene and confronted appellant and her companions. Cook recalled appellant "hollering at Ms. King." He also described a small abrasion on the inside of

appellant's "right pinkie finger." In a statement to Cook, appellant admitted "she was in a fight with" King.

Appellant testified that Harmon initiated an attack on Woodson in the parking lot, while King attacked appellant with a bottle. According to appellant, King hit her with the bottle after which they "fell to the ground." Appellant testified that she "was defending [her]self."

Katina Woodson testified that Harmon and King attacked her and appellant. Woodson said she fought with Harmon while appellant fought with King. Woodson recalled appellant's hand being cut and bleeding.

Code § 18.2-51 provides: "If any person maliciously shoot, stab, cut, or wound any person or by any means cause him bodily injury, with the intent to maim, disfigure, disable, or kill, he shall, except where it is otherwise provided, be guilty of a Class 3 felony." "Circumstantial evidence is as competent and is entitled to as much weight as direct evidence, provided it is sufficiently convincing to exclude every reasonable hypothesis except that of guilt." Coleman v. Commonwealth, 226 Va. 31, 53, 307 S.E.2d 864, 876 (1983). However, the Commonwealth is required to exclude only such reasonable "hypothesis . . . that . . . 'flow[s] from the evidence itself, and not from the imagination of defendant's counsel.'" Tyler v. Commonwealth, 254 Va. 162, 166, 487 S.E.2d 221, 223 (1997) (citation omitted). The fact finder is permitted to draw reasonable and justified inferences from proven facts, including the inference "that a person intends the immediate, direct, and necessary consequences of his voluntary acts." Moody v. Commonwealth, 28 Va. App. 702, 706-07, 508 S.E.2d 354, 356 (1998). "'[W]hether the required intent exists is generally a question for the trier of fact.'" Crawley v. Commonwealth, 25 Va. App. 768, 773, 492 S.E.2d 503, 505 (1997) (citation omitted).

"'Malice is evidenced either when the accused acted with a sedate, deliberate mind, and formed design, or committed any purposeful and cruel act without any or without great provocation.'" Luck v. Commonwealth, 32 Va. App. 827, 833, 531 S.E.2d 41, 44 (2000) (citation omitted). "'Malice inheres in the doing of a wrongful act intentionally, or without just cause or excuse, or as a result of ill will[,]'" Long v. Commonwealth, 8 Va. App. 194, 198, 379 S.E.2d 473, 475 (1989) (citation omitted), and "may be inferred 'from the deliberate use of a deadly weapon,'" Doss v. Commonwealth, 23 Va. App. 679, 686, 479 S.E.2d 92, 96 (1996) (citation omitted). Similarly, use of a deadly weapon may support an inference of intent to maim, disfigure or kill, when attended by circumstances otherwise suggestive of such intent. Vaughn v. Commonwealth, 34 Va. App. 263, 268, 540 S.E.2d 516, 518 (2001).

In this case, the trier of fact did not accept the testimony of the appellant and her witnesses that King and Harmon were the aggressors and attacked them. "The credibility of the witnesses and the weight accorded the evidence are matters solely for the fact finder who has the opportunity to see and hear that evidence as it is presented." Sandoval v. Commonwealth, 20 Va. App. 133, 138, 455 S.E.2d 730, 732 (1995). The trier of fact is not required to believe all aspects of a witness' statement or testimony. Rather, it may reject that which it finds implausible, and accept other parts that it finds believable. Durham v. Commonwealth, 214 Va. 166, 169, 198 S.E.2d 603, 606 (1973). Furthermore, a defendant's exculpatory account may be treated, by inference, as an attempt to conceal guilt. See Marable v. Commonwealth, 27 Va. App. 505, 509-10, 500 S.E.2d 233, 235 (1998).

The fact finder relied on circumstantial evidence to find appellant guilty of maiming. That evidence included appellant's admission that she fought with King while her friend, Woodson, fought with Harmon, appellant's comment to King explaining why she attacked King, King's testimony that appellant was in front of her when she felt a sharp pain, Woodson's

testimony that she fought with Harmon while appellant fought with King in the parking lot, and Woodson's observation of blood on appellant's hand. The Commonwealth's evidence was competent, was not inherently incredible and was sufficient to prove beyond a reasonable doubt that appellant was guilty of maiming. Accordingly, we affirm.

<u>Affirmed.</u>