UNPUBLISHED

COURT OF APPEALS OF VIRGINIA

Present: Judges Beales, O'Brien and Malveaux
Argued at Richmond, Virginia

GEORGE TREVON WATSON-SCOTT, A/K/A
  GEORGE T. WATSON

                                                    MEMORANDUM OPINION* BY
v.      Record No. 1538-17-2                        JUDGE MARY BENNETT MALVEAUX
                                                    DECEMBER 4, 2018
COMMONWEALTH OF VIRGINIA


                FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
                              Bradley B. Cavedo, Judge

            Catherine Lawler (Catherine Lawler Attorney at Law, PLLC, on
            briefs), for appellant.

            Rachel L. Yates, Assistant Attorney General (Mark R. Herring,
            Attorney General, on brief), for appellee.


       George Trevon Watson-Scott ("appellant") appeals his conviction for second-degree

murder, in violation of Code § 18.2-32.[1]  He argues that the trial court erred in convicting him

because the element of malice was absent.  He further argues that the trial court erred in

convicting him because he did not hold a malicious intent towards the victim and the doctrine of

transferred intent was not implicated.  For the reasons that follow, we affirm appellant's

conviction.

                                     I.  BACKGROUND

       "Under familiar principles of appellate review, we will state 'the evidence in the light

most favorable to the Commonwealth, the prevailing party in the trial court, and will accord the

_____

       * Pursuant to Code § 17.1-413, this opinion is not designated for publication.

       [1] Appellant was also indicted for use of a firearm in the commission of a felony, in
violation of Code § 18.2-53.1.  The Commonwealth later entered a *nolle prosequi* to that charge.

Commonwealth the benefit of all reasonable inferences fairly deducible from that evidence.'" Sidney v. Commonwealth, 280 Va. 517, 520, 702 S.E.2d 124, 126 (2010) (quoting Murphy v. Commonwealth, 264 Va. 568, 570, 570 S.E.2d 836, 837 (2002)).

Shortly after 2:30 p.m. on October 9, 2016, Jean Redwood left her home to run an errand. Redwood's three grandchildren and her daughter, Carmella Winston, accompanied her. Redwood drove everyone in her car. Winston rode in the front passenger seat, and the grandchildren rode in the back seat.

While driving, Redwood saw her eldest daughter, Jewel Henry, walking in a Richmond neighborhood and stopped to pick her up. Redwood then drove along Hill Street before turning onto St. James Street, which was Henry's destination. There, Redwood parked on the wrong side of the street facing south toward Federal Street. After about five minutes' conversation, Henry left the car and began walking back toward Hill Street.

After Henry left the car, Redwood heard a gunshot and told Winston, "uh-oh, somebody is shooting." Redwood ducked down to her right and then looked up to see glass falling off her shoulder. When Redwood looked at her daughter, she saw that Winston had been struck by a bullet in the corner of her eye. Redwood did not see anyone on the street and did not know where the shot came from, but described the shot as so loud that it seemed to be near. She got out of the car and started yelling for someone to call the police. When no one came to her aid, Redwood got back in her car and drove to the home of one of Winston's friends.

Henry had turned the corner onto Hill Street when she heard three or four gunshots. She ducked at the sound and could not tell where it was coming from. Henry did not see anyone, and an apartment building on the corner prevented her from seeing down St. James Street. Henry could only see the back end of her mother's car. Unaware that her sister had been shot, Henry walked on to a nearby store.

Kenneth Moore was smoking marijuana in his car on St. James Street that afternoon.[2] Moore was parked facing north toward Hill Street and another car, which had two men inside it, was parked in front of him. Moore's wife, Shameek Massey, had left the car to take some groceries inside. The only other people Moore saw at that time were two men with bikes who were walking north along the opposite side of St. James Street. The two men were coming from the direction of Federal Street, behind Moore, and were heading toward Hill Street. One man was wearing blue jeans, and the other man, whom Moore identified in a photo lineup and in court as appellant, was wearing a black hooded sweatshirt with a white symbol on its back. Moore saw the men talking on the other side of the street and then looked down at his phone.

About a minute later Moore heard gunshots. He looked up and saw appellant pointing and firing a gun up St. James Street toward Hill Street. He did not see the man who had been walking and talking with appellant. Moore got out of his car and looked at appellant, who was about twenty or twenty-five feet away, because he had "never seen nothing like that. That . . . was crazy." After appellant fired four or five shots, "an F-word came out of his mouth" and he rode away on his bike. Apart from the two men in the car in front of him, Moore saw no one else on the street except his wife, who had returned from taking groceries inside.

Shameek Massey was standing outside Moore's car when she heard four gunshots. She saw a man firing a gun up St. James Street toward Hill Street. She described the man as wearing

---

[2] Moore testified that he was smoking his first marijuana of the day, had only taken four drags when he heard gunfire, and was not yet feeling the drug's effects. In discussing Moore's identification evidence, the trial court found that "the things he testified about were certain. He was specific, detailed . . . . He is a convicted felon, but I believe his testimony." We note that "the trier of fact is the sole judge of the credibility of . . . witnesses, unless, as a matter of law, the testimony is inherently incredible." Juniper v. Commonwealth, 271 Va. 362, 415, 626 S.E.2d 383, 417 (2006) (quoting Walker v. Commonwealth, 258 Va. 54, 70-71, 515 S.E.2d 565, 575 (1999)).

a black hooded sweatshirt and noted that he had a bike. Massey saw no one else in the area except her husband and the two men in the car in front of Moore's car, who were ducking.

Officer Doran Preston of the Richmond Police Department arrived at the scene just before 3:00 p.m. She found Winston unconscious in Redwood's car and noted both a gunshot wound to Winston's head and a single bullet hole in the car's windshield. Winston was taken to a nearby hospital where she was pronounced dead.[3]

At trial, appellant moved to strike at the conclusion of the Commonwealth's case-in-chief. He argued that the Commonwealth had failed to prove malice because "every single witness testified that there was no one out there . . . . [S]o there's no intent to kill anyone here. There's no transferred intent. There's no target that [appellant was] shooting at . . . . You can infer malice if you shoot at somebody. You don't have [appellant] shooting [at] anybody here." The trial court questioned appellant's counsel about the inferences it might reasonably draw from the circumstances, stating that "we know there was another person out there on a bicycle. Isn't it a reasonable inference that [appellant] was shooting at that person, cursing at that person?" The court noted that after the shooting broke out Moore only saw the shooter, while "[t]he other guy on the bicycle is not in view . . . . [Is it] an unreasonable inference to believe that he is a little farther down the street? . . . . And that's who the malice is directed at?" The court also wondered if the second man with a bike "just disappeared, poof, mid[-]air? . . . He was there and then he's not there. And then there's shooting." Counsel for appellant contended that if the other man had been appellant's target, Moore would have seen him. The court replied that for Moore to have seen the man, Moore "would have [had] to be looking [down

---

[3] The Virginia Department of Forensic Science analyzed a bullet and bullet jacket recovered from Winston's skull and found that they were consistent with a round fired by a .40 caliber Glock firearm. The department also analyzed four .40 caliber cartridge cases found near the spot where Massey saw a man firing a gun. The cases exhibited characteristics which could indicate they were fired by a Glock.

the street]. So, . . . I think it's reasonable that somebody might just focus on the shooter especially when you're standing up next to him." The trial court denied the motion to strike.

The trial court convicted appellant of second-degree murder, in violation of Code § 18.2-32. Appellant moved to set aside the verdict, and the motion was denied. This appeal followed.

## II.  ANALYSIS

### A.  Malice

Appellant argues that the trial court erred in convicting him of second-degree murder because the element of malice was absent.

"We review a challenge to the sufficiency of the evidence under well-settled legal principles. On appeal, this Court considers the evidence in the light most favorable to the Commonwealth, as the prevailing party below, granting to it all reasonable inferences that flow from the evidence." Banks v. Commonwealth, 67 Va. App. 273, 288, 795 S.E.2d 908, 915 (2017). Examining the record from this viewpoint "requires [the Court] to 'discard the evidence of the accused in conflict with that of the Commonwealth.'" Id. (alteration in original) (quoting Cooper v. Commonwealth, 54 Va. App. 558, 562, 680 S.E.2d 361, 363 (2009)). If there is evidentiary support for the conviction, "the reviewing court is not permitted to substitute its own judgment, even if its opinion might differ from the conclusions reached by the finder of fact at the trial." Id. (quoting Clark v. Commonwealth, 279 Va. 636, 641, 691 S.E.2d 786, 788 (2010)). Thus, "[t]he judgment of conviction will be reversed only when the ruling is plainly wrong or without evidence to support it." Cordon v. Commonwealth, 280 Va. 691, 694, 701 S.E.2d 803, 805 (2010). See also Code § 8.01-680. The ultimate question on appellate review of a sufficiency challenge is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime

beyond a reasonable doubt." Banks, 67 Va. App. at 288, 795 S.E.2d at 915 (quoting Maxwell v. Commonwealth, 275 Va. 437, 442, 657 S.E.2d 499, 502 (2008)).

"Second-degree murder . . . is defined as a malicious killing." Woods v. Commonwealth, 66 Va. App. 123, 131, 782 S.E.2d 613, 617 (2016). "Malice inheres in the intentional doing of a wrongful act without legal justification or excuse." Knight v. Commonwealth, 61 Va. App. 148, 156, 733 S.E.2d 701, 705 (2012) (quoting Williams v. Commonwealth, 13 Va. App. 393, 398, 412 S.E.2d 202, 205 (1991)). It is not limited to ill will, "but includes any action flowing from a wicked or corrupt motive, done with an evil mind or wrongful intention, where the act has been attended with such circumstances as to carry in it the plain indication of a heart deliberately bent on mischief." Id. Malice may be either express or implied, and "[i]mplied malice may be inferred from 'conduct likely to cause death or great bodily harm, willfully or purposefully undertaken.'" Id. at 157, 733 S.E.2d at 705 (quoting Canipe v. Commonwealth, 25 Va. App. 629, 642, 491 S.E.2d 747, 753 (1997)). Whether or not a defendant acted with malice "is generally a question of fact and may be proved by circumstantial evidence." Knight, 61 Va. App. at 156, 733 S.E.2d at 705 (quoting Canipe, 25 Va. App. at 642, 491 S.E.2d at 753). To determine whether malice exists, "the fact-finder must be guided by the quality of the defendant's conduct, its likelihood of causing death or great bodily harm, and whether it was volitional or inadvertent . . . ." Id. (quoting Essex v. Commonwealth, 228 Va. 273, 282, 322 S.E.2d 216, 221 (1984)). Further, "[m]alice may be inferred 'from the deliberate use of a deadly weapon.'" Id. (alteration in original) (quoting Doss v. Commonwealth, 23 Va. App. 679, 686, 479 S.E.2d 92, 96 (1996)).

Appellant does not argue that his act of firing a gun multiple times down a city street was not a wrongful act committed without legal justification or excuse. Nor does he argue that his act did not constitute willful or purposeful conduct likely to cause death or great bodily harm.

Instead, he contends that his action was not malicious solely because "there was no person or persons against whom a malicious intent was held." Appellant notes that none of the witnesses identified a specific target of his gunfire, and maintains that the Commonwealth failed to introduce evidence from which it could be inferred that appellant knew anyone was present in the direction in which he fired his gun. Thus, appellant contends, without evidence of a person against whom his conduct was directed, there was no proof of malice.

Appellant's argument is without merit. The Commonwealth introduced the testimony of Kenneth Moore, who stated that immediately prior to the shooting he saw appellant and another man walking with their bikes towards Hill Street along the opposite side of St. James Street. Moore did not see anyone else on the street at that time except for two men in a car on his side of the street. Moore saw appellant and the other man talking with each other and then looked down at his phone. A minute later he heard four or five gunshots and looked up to see appellant firing a gun up St. James Street toward Hill Street. After appellant fired four or five shots, Moore heard appellant curse. Although Moore did not see whom appellant was shooting at, he described being transfixed by the sight of appellant's conduct, and the trial court concluded it was reasonable that Moore would not have been looking for appellant's target because he was focused on the shooter close to him. The other man who had just been with appellant was the only other person Moore had seen on the street prior to the shooting, except for the men in the car in front of him. Neither Moore nor the other witness to appellant's conduct, Shameek Massey, testified that appellant's gunfire was directed at them or the two men. Viewing this evidence in the light most favorable to the Commonwealth and according it all reasonable inferences, a rational trier of fact could have found that when appellant fired a deadly weapon multiple times up St. James Street he was attempting to shoot a specific person—*i.e.*, the man

with a bike who had been walking and talking with him just a minute before. Consequently, we hold that there was sufficient evidence to support a finding of malice.[4]

## B. Transferred Intent

Appellant further argues that the trial court erred in convicting him of second-degree murder because the doctrine of transferred intent does not apply to the instant case. Specifically, he contends that because the Commonwealth failed to prove that he acted with malice towards another person, "there was no [malicious] intention to transpose to [Winston]."

"The doctrine of transferred intent permits a fact finder to transpose a defendant's criminal intent to harm an intended victim to another unintended, but harmed, victim." Blow v. Commonwealth, 52 Va. App. 533, 541, 665 S.E.2d 254, 258 (2008). The doctrine insures that "the defendant is not absolved of criminal responsibility merely because he has the misfortune to harm a bystander rather than his intended victim as a result of his wrongful act." Id. Thus, "when the defendant intends [a criminal act] his intention will be 'transferred' to make him liable for [the unintended crime], provided that the harm is direct and immediate, i.e. within the scope of the intended crime.'" Id. at 543, 665 S.E.2d at 259 (quoting William L. Prosser, Transferred Intent, 45 Tex. L. Rev. 650, 655 (1966-1967)). In considering the issue of transferred intent, "we are bound by the trial court's factual findings unless they are 'plainly wrong' or without evidentiary support; however, we review the trial court's application of the law *de novo*." Id. at 542, 665 S.E.2d at 258.

---

[4] Because we conclude that the evidence was sufficient to support a finding that appellant acted with malice toward his former companion, we need not consider the Commonwealth's alternative argument—that appellant's act of firing a gun on a street where other people were also present also proves malice. As an appellate court, "'we seek to decide cases[] "on the best and narrowest ground available" from the record.' This approach encourages 'judicial self-restraint' by avoiding the resolution of broad, reasonably debatable legal issues when narrower, less debatable legal issues fully dispose of the appeal before the court." Foltz v. Commonwealth, 58 Va. App. 107, 114, 706 S.E.2d 914, 918 (2011) (citation omitted) (quoting Kirby v. Commonwealth, 50 Va. App. 691, 698 n.2, 653 S.E.2d 600, 603 n.2 (2007)).

Appellant's transferred intent argument is without merit. As noted above, the evidence was sufficient to support a finding that when appellant fired his gun multiple times up St. James Street he acted with malice toward a specific individual. That individual was not Winston, but she was a bystander who suffered direct and immediate harm that was within the scope of appellant's effort to shoot the man he had been with. Consequently, we find no error by the trial court in its application of transferred intent to convict appellant of Winston's murder.

## III. CONCLUSION

For the foregoing reasons, we hold that the evidence was sufficient to support appellant's conviction for second-degree murder, in violation of Code § 18.2-32, and affirm appellant's conviction.

<u>Affirmed.</u>