COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present: Judges Huff, O'Brien and Fulton

TONY LAMONTE BROWN

                                        MEMORANDUM OPINION*
v.        Record No. 0598-23-1                    PER CURIAM
                                        MAY 14, 2024

COMMONWEALTH OF VIRGINIA

FROM THE CIRCUIT COURT OF THE CITY OF NORFOLK
Robert B. Rigney, Judge

(Harry Dennis Harmon, Jr., on brief), for appellant.

(Jason S. Miyares, Attorney General; Robert D. Bauer, Assistant
Attorney General, on brief), for appellee.


After a bench trial, the court convicted Tony Lamonte Brown (appellant) of attempted

malicious wounding, using a firearm in the commission of a felony, and carrying a concealed

weapon. Appellant challenges the sufficiency of the evidence to establish his identity as a shooter,

and to prove that he acted with malice. He also argues that the evidence was consistent with

self-defense. After examining the briefs and record, the panel unanimously holds that oral argument

is unnecessary because "the appeal is wholly without merit." Code § 17.1-403(ii)(a);

Rule 5A:27(a).

BACKGROUND[1]

On the afternoon of April 1, 2022, appellant accompanied Shaquan Clayton and Jovan

Elliott to the student recreation center at Old Dominion University ("ODU"). Appellant was not a

---

* This opinion is not designated for publication. *See* Code § 17.1-413(A).

[1] On appeal, we recite the facts "in the 'light most favorable' to the Commonwealth, the
prevailing party in the trial court." *Hammer v. Commonwealth*, 74 Va. App. 225, 231 (2022)
(quoting *Commonwealth v. Cady*, 300 Va. 325, 329 (2021)). In doing so, we "discard the

student, so he bought a guest pass. To acquire the pass, appellant provided his identification, and submitted to a photograph, in which he was wearing a gray hoodie.

Later that evening, the men joined some friends at a club, "The Edge." Shortly after 1:00 a.m. on April 2, the group walked from the club to a 7-Eleven across the street. Footage from a store security camera captured images of appellant wearing a gray hoodie. The group returned to The Edge, where they encountered another man who they believed was urinating near their vehicles—a Honda and a Toyota. In response, they moved both cars to a parking lot between the 7-Eleven and a restaurant, and four of appellant's companions returned to The Edge to confront the man. Footage from a nearby security camera shows the man's sister approach and briefly join in the argument before her fiancé, Marvin Jones, intervened. The two groups separated, and Jones returned to the club while appellant's group returned to their vehicles.

Soon after the argument, Jones walked to his car in the club's parking lot. As Jones stood near his vehicle, appellant and his companions began moving among the cars parked outside the restaurant across the street from the club. Just as Jones's fiancée approached Jones's car, Clayton opened fire. Jones ducked behind another vehicle but emerged and returned fire. During the exchange of gunfire, appellant moved away from Clayton and took cover behind an SUV parked a few spaces away from the group's Honda and Toyota. As he took cover, appellant pocketed something that he had been holding in his hands.

Seconds later, the Honda pulled out of its parking spot and drove past appellant, Clayton, and one of their companions. At the same time, Jones re-emerged from cover and fired towards the group, and appellant fled back toward the restaurant. Appellant drew a pistol, stepped out from

evidence of the accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences to be drawn therefrom." *Cady*, 300 Va. at 329 (quoting *Commonwealth v. Perkins*, 295 Va. 323, 324 (2018)).

behind the restaurant, and—together with Clayton and another person—fired shots towards Jones before appellant ran to the departing Toyota.

Officers located 26 shell casings at the scene of the shooting—ten nine-millimeter casings, ten .45 caliber casings, and six .40 caliber casings. Six rounds were fired from Jones's location, and the rest were fired from the restaurant's parking lot. Forensic analysis determined that four firearms were used in the shooting, including two different .40 caliber weapons, and that each weapon fired multiple rounds.

ODU Police Detective Destini Williams spoke with appellant, who admitted that he was present at the time of the shooting and had a firearm at that time, but denied discharging it. Detective Williams showed him surveillance images from the nearby 7-Eleven, taken minutes before the shooting, and appellant identified himself as the man in a gray hoodie. After hearing that the man in gray was a shooter, appellant instead identified himself as a different figure. Detective Williams identified this person as a shooter as well, and in response appellant again identified himself as the man in gray.

Approximately two weeks later, Norfolk Police Officer Arielle Wimbrough saw appellant walking near his home with another man. Appellant adjusted his waistband, which led her to believe that he had a firearm. Appellant and the other man went into appellant's home for about 20 minutes, and then left on foot. At that point, the officer saw appellant's companion walking with his hand in his pocket and adjusting his waistband. Officer Wimbrough called out to appellant. Appellant stopped, but his companion fled. Officer Wimbrough located a cell phone and a firearm hidden near the path of the man's flight. Later, forensic analysis determined that the firearm—a .45 caliber Glock—discharged ten rounds during the April 2 shooting.

At trial, Jones testified that he approached the group during the argument to get his fiancée because he "was ready to go." According to Jones, the gunfire "just happened" after he walked to

his car and started it up to leave. Because his first instinct was to shoot back, he drew his firearm and fired three shots in response. During cross-examination, appellant's attorney asked Jones if he had fired six shots. Jones denied firing six shots, although six casings were recovered from his location, and reiterated that he fired only three times. Jones could not recall the number of shots fired at him and could identify neither the shooters nor the men from the argument outside the club.

Appellant testified that he took no part in the shooting and he did not see the initial shots because he was opening the door of the Honda. Appellant claimed that he and one of his companions left in the Honda soon after the initial shots were fired. Appellant stated that he misidentified himself to Detective Williams as the man in gray because he was scared. Finally, he denied any connection to the firearm discovered after Officer Wimbrough stopped him and his companion.

At the conclusion of the evidence, appellant moved to strike and argued that the Commonwealth had not directly tied him to any of the guns fired during the shooting. Appellant conceded that he was present at the time of the shooting and possessed a firearm but claimed that he never fired his weapon. He also maintained that he misidentified himself as the figure in gray and stated that he was a different figure that left the scene during the shooting. Finally, he contended that if the court did determine that he was the figure in gray, the evidence did not support an attempted malicious wounding conviction because the video showed him shooting into the air, rather than at Jones. The court denied appellant's motion and convicted him of the charged offenses.

ANALYSIS

"When reviewing the sufficiency of the evidence, '[t]he judgment of the trial court is presumed correct and will not be disturbed unless it is plainly wrong or without evidence to support it.'" *McGowan v. Commonwealth*, 72 Va. App. 513, 521 (2020) (alteration in original)

(quoting *Smith v. Commonwealth*, 296 Va. 450, 460 (2018)). "[T]he relevant question is whether '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Vasquez v. Commonwealth*, 291 Va. 232, 248 (2016) (quoting *Williams v. Commonwealth*, 278 Va. 190, 193 (2009)).

## I. Identity

Appellant challenges the sufficiency of the evidence to establish his identity as the shooter wearing a gray hoodie. He contends that during his interview with Detective Williams, he mistakenly identified himself as the man in gray because he was scared, and relies on the fact that Jones could not identify his assailants.

"At trial, the Commonwealth bears the burden of proving the identity of the accused as the perpetrator beyond a reasonable doubt." *Cuffee v. Commonwealth*, 61 Va. App. 353, 364 (2013) (quoting *Blevins v. Commonwealth*, 40 Va. App. 412, 423 (2003)). On appeal, we review the trier of fact's determination about the identity of the criminal actor in the context of "the totality of the circumstances." *See Brown v. Commonwealth*, 37 Va. App. 507, 523 (2002) (quoting *Satcher v. Commonwealth*, 244 Va. 220, 249 (1992)). As with any element of an offense, identity may be proved by direct evidence or by circumstantial evidence. *Crawley v. Commonwealth*, 29 Va. App. 372, 375 (1999).

"It is firmly established that '[c]ircumstantial evidence is competent and is entitled to as much weight as direct evidence provided that the circumstantial evidence is sufficiently convincing to exclude every reasonable hypothesis except that of guilt.'" *Kelley v. Commonwealth*, 69 Va. App. 617, 629 (2019) (alteration in original) (quoting *Pijor v. Commonwealth*, 294 Va. 502, 512 (2017)). "Circumstantial evidence is not 'viewed in isolation' because the 'combined force of many concurrent and related circumstances, each insufficient in itself, may lead a reasonable [fact finder]' to conclude beyond a reasonable doubt that a

defendant is guilty." *Rams v. Commonwealth*, 70 Va. App. 12, 27 (2019) (alteration in original) (quoting *Muhammad v. Commonwealth*, 269 Va. 451, 479 (2005)). Here, the record contains ample evidence for the fact finder to determine that appellant was the shooter in the gray hoodie.

Appellant was photographed at ODU's student recreation center on the afternoon of April 1, wearing a gray hoodie. Surveillance footage from the 7-Eleven store showed him in a gray hoodie minutes before the shooting. Appellant conceded that he possessed a firearm at the time of the shooting, and the figure in the gray hoodie fired at Jones during the shootout. Although the shooters' faces are not visible in the videos of the shooting, a reasonable fact finder could have watched the videos, considered them along with the other evidence, and concluded that appellant was the shooter in the gray hoodie. *See Meade v. Commonwealth*, 74 Va. App. 796, 806 (2022) ("[O]n appellate review, [we] view video evidence . . . for the limited purpose of determining whether any rational fact[]finder could have viewed it as the trial court did."). Accordingly, the evidence, viewed in the light most favorable to the Commonwealth, supports the court's finding.

## II. Self-defense

Appellant asserts that the trial court erred in finding the evidence sufficient to sustain his convictions because he acted in defense "of himself and another when he discharged [his] firearm."

"Self-defense is an affirmative defense which the accused must prove by introducing sufficient evidence to raise a reasonable doubt about his guilt." *Hughes v. Commonwealth*, 39 Va. App. 448, 464 (2002) (quoting *Smith v. Commonwealth*, 17 Va. App. 68, 71 (1993)). When asserting a claim of self-defense, a defendant concedes that his actions were intentional, but offers an explanation. *See Jones v. Commonwealth*, 71 Va. App. 70, 86 (2019). "Whether an accused proves circumstances sufficient to create a reasonable doubt that he acted in self-defense is a question of fact." *Smith*, 17 Va. App. at 71.

Appellant presented no evidence to support his alternative theory that, if he was in fact the shooter, he acted in self-defense. Instead, appellant relied on the inconsistency between Jones's testimony that he fired three shots and the six casings recovered from his location. On appeal, appellant contends that this evidence, alone, suggested that Jones was the aggressor and that "Clayton returned fire in self-defense."

The mere inconsistency between the physical evidence and Jones's testimony does not establish a reasonable doubt about appellant's guilt, or even that Jones was the aggressor. *Hughes*, 39 Va. App. at 464 (quoting *Smith*, 17 Va. App. at 68). The forensic evidence, or any other evidence, did not establish which of the casings recovered at the scene were fired first, or in what order. To the extent that Jones's testimony was inconsistent with other evidence in the record, a witness's credibility "is within the exclusive province of the [fact finder]." *Dalton v. Commonwealth*, 64 Va. App. 512, 525 (2015) (quoting *Lea v. Commonwealth*, 16 Va. App. 300, 304 (1993)). The fact finder is "free to believe or disbelieve, in part or in whole, the testimony of any witness," and appellant does not argue that Jones was inherently incredible as a matter of law. *Bazemore v. Commonwealth*, 42 Va. App. 203, 213 (2004) (en banc); *see also Hammer v. Commonwealth*, 74 Va. App. 225, 239 (2022) ("An appellate court 'must accept the trial court's determination of the credibility of witness testimony unless, as a matter of law, the testimony is inherently incredible.'" (cleaned up) (quoting *Lambert v. Commonwealth*, 70 Va. App. 740, 759 (2019))).

Further, on brief, appellant appears to argue that the inconsistency in Jones's testimony supports a theory that *Clayton* returned fire in response to Jones's shots. That argument is irrelevant to *appellant's* claim of self-defense. Even assuming, arguendo, that Clayton returned fire in self-defense, that does not automatically establish that *appellant* acted in self-defense.

Thus, the court did not err by finding that appellant failed to carry his burden to prove self-defense.

### III. Malice

Finally, appellant contends that because the evidence established, at most, that he "fired a single round directly upward into the air and not at any individual," the Commonwealth failed to prove the necessary element of malice. Appellant does not challenge the other elements of attempted malicious wounding. Accordingly, we limit our review to the question of whether the record supports the court's determination that appellant acted with malice.

"The presence of malice 'is a question of fact to be determined by [the trier of fact].'" *Fletcher v. Commonwealth*, 72 Va. App. 493, 507 (2020) (alteration in original) (quoting *Long v. Commonwealth*, 8 Va. App. 194, 198 (1989)). "Malice inheres in the 'doing of a wrongful act intentionally, or without just cause or excuse, or as a result of ill will.'" *Tizon v. Commonwealth*, 60 Va. App. 1, 11 (2012) (quoting *Dawkins v. Commonwealth*, 186 Va. 55, 61 (1947)). It is "evidenced either when the accused acted with a sedate, deliberate mind, and formed design, or committed any purposeful and cruel act without any or without great provocation." *Fletcher*, 72 Va. App. at 507 (quoting *Branch v. Commonwealth*, 14 Va. App. 836, 841 (1992)).

"[M]alice may be either express or implied by conduct." *Watson-Scott v. Commonwealth*, 298 Va. 251, 256 (2019) (quoting *Essex v. Commonwealth*, 228 Va. 273, 280 (1984)). Further, malice "may be proved by circumstantial evidence" and "inferred 'from the deliberate use of a deadly weapon.'" *Palmer v. Commonwealth*, 71 Va. App. 225, 237 (2019) (first quoting *Canipe v. Commonwealth*, 25 Va. App. 629, 642 (1997); and then quoting *Doss v. Commonwealth*, 23 Va. App. 679, 686 (1996)).

Here, the video evidence showed several different figures engage in a shootout with Jones outside The Edge. The first shots were fired at Jones from across the street by Clayton, causing

Jones to take cover behind a vehicle parked outside the busy club. The videos also show appellant draw a firearm and discharge it in Jones's direction before fleeing with the others.

Whether malice exists is a question of fact. *Robertson v. Commonwealth*, 31 Va. App. 814, 823 (2000). Credible evidence in the record supports the court's finding of malice. Because appellant used a firearm—a deadly weapon—the court was entitled to infer that appellant possessed the requisite malice necessary to be convicted of attempted malicious wounding. *Tizon*, 60 Va. App. at 11. Further, the physical evidence reflects that each of the four firearms involved fired multiple rounds during the altercation. Shooting a firearm multiple times "in the middle of a populous city is the very definition of an action flowing from a 'wicked and corrupt motive, done with an evil mind and purpose and wrongful intention.'" *Watson-Scott*, 298 Va. at 258 (quoting *Martin v. Commonwealth*, 184 Va. 1009, 1015 (1946)). Thus, the court did not err by denying appellant's motion to strike and finding the evidence sufficient to convict him of attempted malicious wounding.[2]

## CONCLUSION

The court did not err when it determined that the evidence was sufficient to prove appellant's identity as a shooter and that he acted with malice. Additionally, appellant's claim of self-defense is not supported by the record. Accordingly, we affirm appellant's convictions.

*Affirmed.*

---

[2] Considering our ruling on the issue of malice, we need not address appellant's challenge to the sufficiency of the evidence for use of a firearm in the commission of a felony.