PUBLISHED

COURT OF APPEALS OF VIRGINIA

Present:  Chief Judge Huff, Judges Decker and AtLee
Argued at Chesapeake, Virginia


MARQUIS DURRELL JENNINGS

                                                            OPINION BY
v.        Record No. 0063-15-1          JUDGE RICHARD Y. ATLEE, JR.
                                                      DECEMBER 22, 2015
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF CHESAPEAKE
Frederick B. Lowe, Judge Designate

Jennifer L. Titter, Assistant Public Defender, for appellant.

Christopher P. Schandevel, Assistant Attorney General (Mark R.
Herring, Attorney General, on brief), for appellee.


Marquis Durrell Jennings appeals two felony convictions:  grand larceny and grand

larceny with the intent to sell.  First, he argues that the trial court erred when it overruled his best

evidence objection to testimony about the value of the stolen goods.  Second, he argues that the

evidence was insufficient to support his convictions because "the testimony was based on an

observation of a stack [of jeans] rather than a definite number and therefore value is at question."

We find no merit in his second argument, but we agree with Jennings that the trial court should

have sustained his best evidence objection.  For that reason, we reverse and remand.

I. BACKGROUND

"On appeal, 'we consider the evidence and all reasonable inferences flowing from that

evidence in the light most favorable to the Commonwealth, the prevailing party at trial.'"  Dalton

v. Commonwealth, 64 Va. App. 512, 515, 769 S.E.2d 698, 700 (2015) (quoting Williams v.

Commonwealth, 49 Va. App. 439, 442, 642 S.E.2d 295, 296 (2007) (en banc)).  Viewed from

this perspective, the record in this case shows that J.C. Penney ("the store") employed Rebecca Shunk ("Shunk") as a loss prevention officer. In December of 2013, Shunk saw Jennings enter the store and select a suitcase. The suitcase was on sale for $79.99. Shunk watched Jennings take the suitcase up the escalator to the "men's Levi's department." Once there, Jennings placed eight pairs of men's jeans into the suitcase. He then closed the suitcase and exited the store without paying for the suitcase or the jeans. Shunk confronted Jennings outside the store. She recovered the merchandise, but Jennings got away. Eventually, Jennings was apprehended and charged with grand larceny and larceny with the intent to sell.

At trial, Jennings objected to Shunk's testimony about the value of the jeans.[1] The Commonwealth initially questioned Shunk as follows:

Q      Were you aware of the value of the jeans?

A      Yes.

Q      How were you aware of that?

A      I was very well-aware of the jeans because we have to ink-tag these jeans when I do my audit so I have to make sure there are ink tags on them. If not, I put them on myself, and they are placed very close to the price.

Q      You read off the price tag what the value of the jeans were?

A      Yes.

Jennings's attorney objected, and had the following exchange with the trial judge:

Q      Your Honor, I object as far as best evidence goes. If they are going to testify to the value of the jeans, I think they need --

A      Overruled.

---

[1] Shunk's testimony about the value of the suitcase ($79.99) was based upon her observation of a nearby sign announcing that price. Jennings did not object to Shunk's testimony about the price of the suitcase written on the sign.

Q       -- the ticket.

A       She can testify she saw the price tag on them.

Following that ruling, the Commonwealth asked Shunk: "What is the value of the jeans?" She responded: "Forty each."[2]

The Commonwealth did not offer a price tag into evidence, nor did Shunk testify about any knowledge of the price of the jeans, other than what she read on the price tags. The judge found Jennings guilty of both grand larceny and grand larceny with the intent to sell, and sentenced him to a total of ten years in the penitentiary with nine years suspended.

## I. ANALYSIS

### A. BEST EVIDENCE

A trial court's decision to sustain or overrule a best evidence objection, like other decisions about the admissibility of evidence, is reviewed for abuse of discretion. Dalton, 64 Va. App. at 521, 769 S.E.2d at 703. The inquiry is not whether we, as an appellate court, would have ruled as the trial court did. Id. Rather, we find an abuse of discretion "[o]nly when reasonable jurists could not differ . . . ." Thomas v. Commonwealth, 44 Va. App. 741, 753, 607 S.E.2d 738, 743, adopted upon reh'g en banc, 45 Va. App. 811, 613 S.E.2d 870 (2005).

"Lord Hardwicke, sitting as chancellor, said that '[t]he judges and sages of the law have laid it down that there is but one general rule of evidence, the best that the nature of the case will allow.'" Brown v. Commonwealth, 54 Va. App. 107, 114, 676 S.E.2d 326, 329 (2009) (quoting Omychund v. Barker, 26 Eng. Rep. 15, 1 ATK 22, 49 (1744)).

> The "best evidence rule," which made its appearance in the English law in the early part of the eighteenth century, was not originally a "rule," but rather "a general observation to the effect that when one sets out to prove something, one ought to prove it by the most reliable evidence available." Charles E. Friend, Kent Sinclair, The Law of Evidence in Virginia § 18-1 (7th ed. 2012).

---

[2] Shunk clarified a short time later "Forty dollars each."

Dalton, 64 Va. App. at 521-22, 769 S.E.2d at 703. Virginia's Rules of Evidence state the best evidence rule this way: "To prove the content of a writing, the original writing is required, except as otherwise provided in these Rules, other Rules of the Supreme Court of Virginia, or in a Virginia statute." Va. R. Evid. 2:1002. The first step in deciding if the best evidence rule applies is determining whether price tags are writings.

### 1. Are Price Tags Writings?

"'Writings' consist of letters, words, or numbers, or their equivalent, set down by handwriting, typewriting, printing, photostating, photographing, magnetic impulse, mechanical or electronic recording, or other form of data compilation or preservation." Va. R. Evid. 2:1001. In this instance, tags were affixed to the jeans, and Shunk "read off the price tag what the value of the jeans were."

The Commonwealth urges us to find that price tags are not writings at all, but rather are akin to inscriptions or engravings. This hybrid category of evidence, known in other jurisdictions as "inscribed chattels," comprises physical evidence combined with writing in such a manner that the two cannot be separated. The Fifth Circuit Court of Appeals has explained: "When the disputed evidence . . . is an object bearing a mark or inscription, and is, therefore, a chattel *and* a writing, the trial judge has discretion to treat the evidence as a chattel or as a writing." United States v. Duffy, 454 F.2d 809, 812 (5th Cir. 1972) (white shirt with a laundry mark containing three letters). Since this case involves inscribed chattels, the Commonwealth argues, "this Court need not engage in a full best evidence analysis . . . ." This argument is unpersuasive.[3]

---

[3] While the Commonwealth urges us to view the price tags as inscribed chattels, what it apparently means to argue is that the *jeans* are inscribed chattels. Under such an analysis, the jeans are the physical, non-writing evidence, and the price tags are the writing inscribed upon them.

- 4 -

Inscribed chattels are a class of property unknown either to Virginia common law, the Rules of Evidence, or the Code. Inscribed chattels constitute an inseparable (or nearly inseparable) combination of writing and physical object. Examples include serial numbers stamped into or written on objects (such as vehicles and appliances), identifying information engraved into weapons, and labels glued onto prescription bottles and beer bottles.[4] In each such instance, it would be impossible, or at least difficult, to present the "writing" to a factfinder without also presenting the medium to which such writing was affixed. Price tags are a wholly dissimilar class of writings.[5] They can easily be attached to and detached from the items they label.[6] A price tag can be held in the palm of the hand and offered into evidence, in contrast to

___

[4] For these and other examples, see United States v. Buchanan, 604 F.3d 517 (8th Cir. 2010) (writing inscribed on safe's interior); United States v. Yamin, 868 F.2d 130 (5th Cir. 1989) (counterfeit trademarks on watches); People v. Bizieff, 277 Cal. Rptr. 678 (Cal. Ct. App. 1991) (credit card); People v. Mastin, 171 Cal. Rptr. 780 (Cal. Ct. App. 1981) (four guns and a knife inscribed with owner's initials); People v. Wortham, 690 P.2d 876 (Colo. App. 1984) ("for rent" sign posted on front door of a home); Lawson v. State, 803 N.E.2d 237 (Ind. Ct. App. 2004) (labels on beer bottles); Conner v. State, 366 A.2d 385, 390 (Md. 1976) ("manufacturer's 'secret' serial number located in a 'secret' place on [a] motorcycle"); Commonwealth v. Blood, 77 Mass. 74 (1858) (labels on jugs); State v. O'Dell, 649 S.W.2d 504 (Mo. Ct. App. 1983) (serial number stamped on boat trailer); State v. Fontana, 589 S.W.2d 639 (Mo. Ct. App. 1979) (credits cards and driver's license); State v. Powell, 300 S.E.2d 270 (N.C. Ct. App. 1983) (serial numbers inscribed on tractors); Commonwealth v. Byers, 467 A.2d 9, 11 (Pa. Super. Ct. 1983) ("mail addressed to appellant and prescription vials bearing appellant's name"); Wallis v. State, 546 S.W.2d 244 (Tenn. Crim. App. 1976) (serial numbers on television sets); State v. Hillman, 444 N.W.2d 66 (Wis. Ct. App. 1989) (tax numbers inscribed on boxes of cigarettes).

[5] Two cases from Alabama have held that testimony about the contents of price tags, without admission of the price tags themselves, does not violate the best evidence rule. Bell v. State, 364 So. 2d 420 (Ala. Crim. App. 1978); Benjamin v. State, 67 So. 792 (Ala. Ct. App. 1915). These two cases are anomalies, contrary not only to Virginia's cases addressing the best evidence rule, but also to the holdings of cases, from those states and circuits that embrace the concept of inscribed chattels. As such, we decline to adopt Alabama's approach.

[6] The record is unclear about the physical details of the price tags. We do not know, for instance, whether the prices on the tags were handwritten or printed. Nor do we know whether such prices were represented by numbers, words, or some combination of the two. Lastly, we do not know how the price tags were attached to the clothes, i.e. whether the tags were stapled, tied, or affixed by some adhesive. The Commonwealth does not dispute, however, that prices were written on tags (as opposed to being written directly onto the jeans themselves).

the practical difficulties that would arise were one to employ the same procedure to admit the original identification number engraved upon a boat trailer, for instance. The jeans in this case were not "an object bearing a mark or inscription," Duffy, 454 F.2d at 812; rather, they were physical objects, with writings attached. Virginia's courts have never recognized inscribed chattels as a distinct class of evidence. Even if inscribed chattels were an evidentiary category recognized in Virginia, the chattels at issue here would not qualify. We find that the price tags were writings.

### 2. Must the Commonwealth Have Introduced the Price Tags?

Finding that the price tags were writings within the meaning of the best evidence rule, we must determine whether the best evidence rule barred Shunk's testimony about the contents of the price tags. The Commonwealth offers two reasons to support its position that Shunk's testimony did not violate the best evidence rule.

#### i. *The Testimony was Not Offered to Prove the Contents of a Writing*

First, the Commonwealth argues that "Shunk's testimony was admissible because it was offered to prove the jeans' value, a fact that existed independently of the jeans' price tags." This argument, while thought-provoking from an economic and epistemological standpoint, is circular. Certainly the value of the jeans existed independently of the price tags. Writings by their nature usually memorialize a fact or idea expressed elsewhere.[7] That a writing is not the sole expression of the fact communicated does not mean that such writing is exempt from the best evidence rule. The Commonwealth was free to prove the value of the jeans using evidence

---

[7] This is certainly true in the commercial context with which we are dealing, where writings convey data to assist buyers in making purchasing decisions. It is less true when one thinks about other types of writing, such as an original work of fiction, where an unpublished manuscript for a novel, for instance, might very well be the only written manifestation of an idea.

other than the price tags, and even to present testimony concerning the price tags without presenting the price tags themselves, if the absence of the tags was legally justified pursuant to Rule 2:1004. The Commonwealth did neither of these things at trial, however. Shunk did not testify that she had any independent knowledge of the price of the jeans. She recited the words or numbers she had read on the tags, and this recitation of the writing was the only proof of value the Commonwealth offered.

More compelling than any philosophical discussion about the source of value are the two centuries of Virginia authority precluding the testimony offered by Shunk.[8] Two recent cases warrant further discussion, due to their similarity to the case at bar. Both cases involved retail larceny, and at trial in both cases, the Commonwealth elicited testimony about the contents of receipts without offering the receipts themselves into evidence.

In 1999 the Supreme Court decided Robinson v. Commonwealth, 258 Va. 3, 516 S.E.2d 475 (1999). Robinson announced a new exception to the hearsay rule that permitted the

---

[8] See Robinson v. Commonwealth, 258 Va. 3, 516 S.E.2d 475 (1999) (affirming trial court's admission of loss prevention officer's testimony as to the contents of price tags, in the absence of the price tags themselves, when defendant made no best evidence objection); Basham v. Terry, 199 Va. 817, 102 S.E.2d 285 (1958) (reversing trial court's erroneous admission of testimony about the contents of a warrant, in the absence of the warrant itself); Butts v. Commonwealth, 145 Va. 800, 133 S.E. 764 (1926) (reversing trial court's erroneous admission of testimony about the contents of a timecard, in the absence of the timecard itself); Millers v. Catlett, 51 Va. (10 Gratt.) 477 (1853) (affirming trial court's rejection of testimony about the administration of an estate, in the absence of the will itself); Hamlin's Admin. v. Atkinson, 27 Va. (6 Rand.) 574 (1828) (reversing trial court's erroneous admission of testimony concerning the contents of receipts, in the absence of the receipts themselves); Lee v. Tapscott, 2 Va. (2 Wash.) 276, 278-79 (1796) ("It is a sound and well established rule of law, that the best evidence which the nature of the case admits must be produced. . . . Inferior evidence may be resorted to, where from the nature of the case better cannot be had."). The Commonwealth acknowledged these cases, noting that Supreme Court precedent "would seem to preclude this Court from considering" the Commonwealth's argument that such cases were "wrongly decided." We agree that we cannot rule contrary to established Supreme Court precedent. "[W]e are bound by the decisions of the Supreme Court. . . . We cannot and do not ignore the clear precedent established by these cases." Martinez v. Commonwealth, 42 Va. App. 9, 19, 590 S.E.2d 57, 62 (2003).

admission of price tags in retail theft cases to establish the value of the items to which such tags were affixed, without requiring further evidence of value. Under the proper circumstances, Robinson permitted testimony about the contents of price tags, even without admission of the tags themselves:

> [W]e think the common-sense approach to the problem is to recognize an exception to the hearsay rule in shoplifting cases permitting the admission into evidence of price tags regularly affixed to items of personalty offered for sale or, in substitution, testimony concerning the amounts shown on such tags when, as in this case, there is no objection to such testimony on best evidence grounds.

Id. at 10, 516 S.E.2d at 479. The portion of this holding permitting testimony about price tags came with an explicit caveat, limiting it to situations where "there is no objection to such testimony on best evidence grounds." Id. This caveat is relevant here, because Jennings made just such an objection. Because he made that objection, the Commonwealth was required to admit the price tags themselves, or present some explanation for their absence.

More recently, a panel of this Court decided Watkins v. Commonwealth, Record No. 1558-13-1, 2014 Va. App. LEXIS 264 (Va. Ct. App. July 22, 2014).[9] That case involved facts remarkably similar to those we confront today. In Watkins, the appellant was accused of stealing several pairs of jeans from a department store. Over the best evidence objection of the defendant's attorney, the Commonwealth elicited testimony from the loss prevention officer about the value of the jeans. The Commonwealth never offered a price tag or receipt[10] into evidence, and never explained the absence of such evidence. We now hold as the panel in

---

[9] Although Watkins is an unpublished decision, "this Court can consider the rationale used and adopt it here since it is persuasive." McMillan v. Commonwealth, 55 Va. App. 392, 414 n.16, 686 S.E.2d 525, 536 n.16 (2009).

[10] Pursuant to Twine v. Commonwealth, 48 Va. App. 224, 234, 629 S.E.2d 714, 719 (2006), cash register receipts are admissible pursuant to the logic of the price tag exception to the hearsay rule discussed in Robinson.

<u>Watkins</u> held: "[I]n order to overcome appellant's best evidence objection to the Commonwealth's request to admit the evidence concerning the contents of the price tags, the Commonwealth needed to produce into evidence the price tags themselves—or needed to provide an explanation why the price tags were unavailable at trial." <u>Id.</u> at *9.

### ii. Rule-based Exceptions

Second, the Commonwealth argues that the testimony about the price tags fits into an exception under the Rules of Evidence. Rule 2:1004 lists exceptions to the general best evidence rule:

> The original is not required, and other evidence of the contents of a writing is admissible if:
>
> (a) *Originals lost or destroyed*. All originals are lost or have been destroyed, unless the proponent lost or destroyed them in bad faith; or
>
> (b) *Original not obtainable*. No original can be obtained by any available judicial process or procedure, unless the proponent acted in bad faith to render the original unavailable; or
>
> (c) *Original in possession of opponent*. At a time when an original was under the control of the party against whom offered, that party was put on notice, by the pleadings or otherwise, that the contents would be a subject of proof at the hearing, and that party does not produce the original at the hearing; or
>
> (d) *Collateral matters*. The writing is not closely related to a controlling issue.

As permitted by this Rule, the Commonwealth was free to offer "other evidence of the contents" of the price tag. Having offered no such evidence, the Commonwealth now argues that "the trial court reasonably could have inferred that the price tags were unavailable at trial because the jeans had been sold in the intervening months." Had the trial court made such an inference, we would be left to examine whether it was reasonable. But there is no indication that

the trial court so inferred. To find that it did, we would be required to "infer an inference," a leap we cannot make.

For all of these reasons, we find that Shunk's testimony about the contents of the price tags violated the best evidence rule. Such an error, however, cannot form the basis for reversal unless we find that the error was not harmless. Code § 8.01-678(2) states:

> When it plainly appears from the record and the evidence given at the trial that the parties have had a fair trial on the merits and substantial justice has been reached, no judgment shall be arrested or reversed . . . [f]or any other defect, imperfection, or omission in the record, or for any error committed on [sic] the trial.

The erroneously-admitted testimony from Shunk established that the property taken was worth $200 or more, an essential element of the offenses. See Foster v. Commonwealth, 44 Va. App. 574, 578, 606 S.E.2d 518, 520 (2004) (noting that "the value of the goods is an essential element of grand larceny"). Aside from Shunk's testimony about value, the Commonwealth otherwise failed to establish the element of value. As such, we hold that the error was not harmless.

## B. SUFFICIENCY OF THE EVIDENCE

"In reviewing the sufficiency of the evidence on appeal, we apply an established standard of review. We will approve the circuit court's holding unless it is plainly wrong or without evidentiary support." Commonwealth v. Miller, 273 Va. 540, 551, 643 S.E.2d 208, 214 (2007). When reviewing the evidence for sufficiency, we must consider all the evidence admitted at trial, including evidence admitted erroneously. See Code § 19.2-324.1 ("In appeals to the Court of Appeals or the Supreme Court, when a challenge to a conviction rests on a claim that the evidence was insufficient because the trial court improperly admitted evidence, the reviewing court shall consider all evidence admitted at trial to determine whether there is sufficient evidence to sustain the conviction.").

In his second and third assignments of error, which we address together, Jennings asserts that the evidence was insufficient as to both charges, because "the testimony was based on an observation of a stack [of jeans] rather than a definite number and therefore value is at question." Shunk's testimony about the number of pairs of jeans was sufficient. She was clear: "What I saw was eight jeans." When Jennings's trial attorney asked Shunk "Is that based off the—counting the stack?" Shunk answered: "Yes." Jennings points to no legal error in the trial court's assessment of the evidence surrounding the number of pairs of jeans taken. We decline to judge the facts anew, because "[a]s an appellate court, we are not permitted to reweigh the evidence." Nusbaum v. Berlin, 273 Va. 385, 408, 641 S.E.2d 494, 507 (2007). The evidence of the number of pairs of jeans taken was sufficient.

III. CONCLUSION

While the evidence was sufficient as to the number of pairs of jeans stolen, we hold that the trial court erred in overruling Jennings's best evidence objection to the testimony regarding the value of such jeans. As this error was not harmless, we reverse both convictions, and remand them for retrial, should the Commonwealth, in its discretion, elect to retry Jennings.[11]

Reversed and remanded.

---

[11] Jennings asks us to dismiss the charge of grand larceny with the intent to sell, and to vacate the grand larceny conviction and remand for sentencing on petit larceny. However, "[i]f the reviewing court determines that evidence was erroneously admitted and that such error was not harmless, the case shall be remanded for a new trial if the Commonwealth elects to have a new trial." Code § 19.2-324.1.