UNPUBLISHED

COURT OF APPEALS OF VIRGINIA


Present:   Chief Judge Huff, Judges Decker and AtLee
Argued at Chesapeake, Virginia


TIMOTHY DALE WADFORD

MEMORANDUM OPINION* BY
v.        Record No. 1641-16-1           JUDGE RICHARD Y. ATLEE, JR.
                                          OCTOBER 31, 2017

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF SUFFOLK
Robert H. Sandwich, Jr., Judge

James L. Grandfield, Public Defender, for appellant.

Elizabeth Kiernan Fitzgerald, Assistant Attorney General (Mark R.
Herring, Attorney General, on brief), for appellee.


A judge of the Circuit Court of the City of Suffolk ("trial court") convicted appellant

Timothy Dale Wadford of driving or operating a motor vehicle while intoxicated, third offense

within ten years.[1]  He received a sentence of three years in prison with all but ninety days

suspended.  On appeal, he argues that the trial court erred when it admitted a 2012 conviction

order as evidence of that conviction.  He also argues the evidence was not sufficient to prove that

he was too impaired to operate his vehicle.  For the following reasons, we affirm.

I. BACKGROUND

A gas station employee called the Suffolk Police to report that someone in the parking lot

was "slouched over" in the driver's seat of a car and needed assistance.  She said that he was not

moving and that she and her co-workers "weren't sure if he was dead or not" (although she

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] Wadford also was convicted of possession of heroin, but that conviction is not at issue
in this appeal.

observed that he began to move during the call). She also believed someone had been injecting heroin in the gas station's bathroom. An officer responded and found Wadford in the driver's seat of a vehicle with the key in the ignition and the engine running. The officer noted that Wadford's eyes were watery and glassy, and she noted a faint smell of alcohol. Wadford explained that he was at the gas station to use the bathroom. He confirmed that a beverage in his vehicle's cup holder was beer, but claimed that "he wasn't drinking it right then." He explained that he had been drinking with a friend prior to arriving at the gas station. He told the officer that he had taken prescribed diazepam (the generic name for Valium) and oxycodone that morning. After the officer reviewed the prescriptions' labels with him, Wadford agreed that he probably should not be driving after taking those medications. Based on this evidence, in addition to Wadford's performance on several field sobriety tests, he was arrested for driving under the influence. The arrest took place at approximately 2:00 p.m., about forty minutes after the police arrived.

At the police station, a breath test showed no alcohol in Wadford's system. The officer took him to a hospital for a blood draw, which took place at 6:10 p.m. Subsequent laboratory analysis showed the presence and concentrations of morphine, diazepam, nordiazepam, oxazepam, temazepam, and diphenhydramine. An expert in forensic toxicology who analyzed Wadford's blood testified that morphine can be present in blood after a patient has used heroin. She explained that the next four substances were consistent with taking Valium: diazepam is its generic name; nordiazepam, oxazepam, and temazepam are byproducts of its breakdown. She noted that Valium could cause "dizziness, sedation, [and] difficulty with tasks requiring sensorimotor skills." Finally, she explained that the presence of diphenhydramine is consistent with taking Benadryl, which alone "can cause some sedation," but becomes a more significant problem when combined with the other drugs. The expert noted that combining these drugs

- 2 -

would exacerbate each of their depressant effects on the central nervous system, resulting in "drowsiness, sedation, slurred speech" and other lethargic behavior. Together, these drugs "would have ultimately adverse effects on someone's driving ability."

At trial, the Commonwealth introduced two prior Virginia DUI conviction orders from 2007 and 2012 as evidence that the current offense would be Wadford's third DUI within ten years. Wadford objected, arguing that the 2012 conviction was uncounseled because, in a place on the order designated for the name of the defendant's attorney, only "PD" was written. In addition, under "Plea of Accused," the convicting court had checked "guilty," but failed to also check the adjacent box reading "Plea voluntarily and intelligently entered after the defendant was apprised of his right against compulsory self-incrimination and his right to confront the witnesses against him."[2] Despite that omission, the order indicates that the convicting court tried Wadford and found him guilty as charged.

## II. ANALYSIS

### A. The 2012 Conviction Order

Wadford argues that the trial court erred in admitting the 2012 conviction order. We review a trial court's decision to admit or exclude evidence for an abuse of discretion. Jennings v. Commonwealth, 65 Va. App. 669, 673, 779 S.E.2d 864, 866 (2015). In his first assignment of error, Wadford argues that the 2012 order indicated that his conviction was uncounseled because it failed to name the attorney from the Public Defender's Office who represented him. On appeal, Wadford also contends that the 2012 order "did not show that Wadford's guilty plea in that case was voluntarily and intelligently made after being apprised of his right against compulsory self-incrimination and his right to confront witnesses against him." Acknowledging

---

[2] Wadford did not challenge the court's failure to check the box at trial. In addition, although both the 2007 and 2012 conviction orders bear this same oversight, Wadford challenges only the 2012 order.

his failure to preserve this objection in the trial court, he asks us to consider this assignment of error pursuant to the ends of justice exception to Rule 5A:18.

The Commonwealth bears the burden of proving the existence of prior convictions when, as here, such convictions are elements of the charged offense. James v. Commonwealth, 18 Va. App. 746, 752, 446 S.E.2d 900, 903 (1994). It may do so by offering a valid prior conviction order. Id. at 746, 446 S.E.2d at 904. Prior conviction orders are entitled to a "presumption of regularity," because "every act of a court of competent jurisdiction shall be presumed to have been rightly done, till the contrary appears." Samuels v. Commonwealth, 27 Va. App. 119, 123, 497 S.E.2d 873, 875 (1998) (quoting Nicely v. Commonwealth, 25 Va. App. 579, 584, 490 S.E.2d 281, 283 (1997)). A defendant must offer affirmative evidence to rebut the presumption of regularity, James, 18 Va. App. at 752, 446 S.E.2d at 904, and may only collaterally attack a prior conviction by arguing there was an actual denial of counsel, Vester v. Commonwealth, 42 Va. App. 592, 597, 593 S.E.2d 551, 553 (2004) (citing Daniels v. United States, 532 U.S. 374, 378 (2001); Custis v. United States, 511 U.S. 485, 496 (1994); United States v. Simpson, 94 F.3d 1373, 1381 (10th Cir. 1996)).

1. *Defense Counsel's Name*

First, Wadford attempts to collaterally attack the validity of his prior conviction by arguing that the 2012 conviction order fails to show he was represented by counsel because "PD" was written in as "defendant's attorney." Although Wadford equates the failure to name the specific public defender who represented him at the 2012 DUI proceedings with failure to receive representation, he offers no evidence to suggest that he was actually unrepresented. Therefore, he fails to rebut the presumption of regularity. Furthermore, even without relying solely on that presumption, other evidence indicated that Wadford was represented. The preceding page of the same 2012 conviction order indicates that the "Public Defender" was

appointed as the "Attorney for the Accused," consistent with the abbreviation "PD" for the "defendant's attorney" (and mirroring that "CA," for Commonwealth's Attorney, was written as the "prosecuting attorney"). The Commonwealth also introduced evidence that the judge in the 2012 case granted Wadford's request for court-appointed representation. Finally, at trial, defense counsel conceded that "there's no doubt the public defender was appointed." Because Wadford failed to introduce any evidence indicating that he was unrepresented by counsel during the 2012 proceedings, and in light of the uncontroverted evidence that he was, in fact, represented by a public defender, he may not collaterally attack that prior conviction.

### 2. *Voluntary and Intelligent Plea*

Wadford also challenges the 2012 conviction order because a box on the form indicating he entered his plea voluntarily and intelligently was left unchecked. This argument fails for several reasons. Most importantly, as Wadford concedes, the argument is procedurally defaulted. See Rule 5A:18 (requiring that an objection be "stated with reasonable certainty at the time of the ruling" in order to preserve an issue for appellate review). We may consider such defaulted arguments under the "ends of justice" exception, but this exception "is narrow and is to be used sparingly." Delaney v. Commonwealth, 55 Va. App. 64, 68, 683 S.E.2d 834, 836 (2009) (quoting Brown v. Commonwealth, 8 Va. App. 126, 132, 380 S.E.2d 8, 10 (1989)). We invoke it only when "a miscarriage of justice" has occurred, meaning a defendant was convicted for "conduct that was not a criminal offense or the record . . . affirmatively prove[s] that an element of the offense did not occur." Id. No miscarriage of justice occurred here. As such, the ends of justice exception does not apply and the argument is waived.

Even if Wadford preserved this issue, the omission on the prior conviction order does not indicate that Wadford was denied counsel. Therefore, it is also an improper collateral attack on the 2012 conviction. See Vester, 42 Va. App. at 597, 593 S.E.2d at 553 (noting that ineffective

assistance of counsel is not sufficient grounds to collaterally attack a prior conviction). Finally, a mere omission from a prior conviction order, standing alone, does not rebut the presumption of regularity. James, 18 Va. App. at 752, 446 S.E.2d at 904. For all of these reasons, we find no error and conclude the trial court did not abuse its discretion by admitting the 2012 conviction order.

B. Sufficiency of the Evidence

Wadford argues that the evidence was not sufficient to show that he was too impaired to operate his vehicle because he was not too impaired "to sit passively in a car with the engine running." When examining the sufficiency of the evidence supporting a conviction, "we view the evidence, and all inferences reasonably drawn from it, in the light most favorable to the Commonwealth. 'It is our duty to affirm the trial court's judgment unless that judgment is plainly wrong or without evidence to support it.'" Reid v. Commonwealth, 65 Va. App. 745, 753, 781 S.E.2d 373, 377 (2016) (citation omitted) (quoting Muhammad v. Commonwealth, 269 Va. 451, 536, 619 S.E.2d 16, 65 (2005)).

Wadford concedes that his actions here, sitting in the driver's seat with the key in the ignition, clearly qualify as "operation" under existing law addressing alcohol-based DUI convictions. Sarafin v. Commonwealth, 288 Va. 320, 327, 764 S.E.2d 71, 75 (2014) (finding that defendant was operating vehicle because key in ignition while seated in the driver's seat constituted having "actual physical control"). Nevertheless, because Code § 18.2-266 contains additional language regarding impairment in the context of drugs as compared to alcohol,[3] he

---

[3] As pertinent here, it prohibits driving or operating a motor vehicle "while such person is under the influence of any narcotic drug or any other self-administered intoxicant or drug of whatsoever nature, or any combination of such drugs, *to a degree which impairs his ability to drive or operate any motor vehicle, engine or train safely*." Code § 18.2-266(iii) (emphasis added). Some other subsections regarding impairment due to alcohol or specific substances do not contain this italicized language, and instead specify blood concentrations.

- 6 -

argues this Court should establish a different definition of "operation" when the impairment is the result of drug use. Wadford does not present, and we do not see, any appreciable difference between the definition of "operating" a vehicle while impaired due to drug use as opposed to alcohol consumption. We are accordingly bound by our Supreme Court's precedent, and find the evidence sufficient to prove Wadford was operating the vehicle here.[4] For these reasons, we find no error.

## III. CONCLUSION

The trial court did not err in admitting the prior conviction order or in finding the evidence sufficient to convict. Accordingly, we affirm.

<u>Affirmed.</u>

---

[4] Wadford's argument on brief could also be read to argue that, in the context of impairment due to use of multiple substances, the Commonwealth cannot prove impairment solely by presenting evidence that a defendant's blood concentrations exceeded the statutorily proscribed levels, but rather must offer other evidence of impairment. There is little question that the Commonwealth did so here and established that Wadford was impaired as a result of his drug usage. This evidence includes the call from the gas station employees reporting Wadford being "slouched" over his steering wheel, the evidence that he had been using heroin, the officer's observations of Wadford's physical appearance and performance on the field sobriety tests, Wadford's admitting to having taken medications that could adversely affect his ability to drive, and finally, the results of his blood test and accompanying expert testimony about the expected adverse effects those substances, in those concentrations, would have on one's ability to operate a motor vehicle.