COURT OF APPEALS OF VIRGINIA

Present: Judges AtLee, Fulton and Raphael
Argued at Norfolk, Virginia

BEN MATTHEW WYNKOOP

v.      Record No. 0843-24-1

COMMONWEALTH OF VIRGINIA

MEMORANDUM OPINION* BY
JUDGE RICHARD Y. ATLEE, JR.
NOVEMBER 12, 2025

FROM THE CIRCUIT COURT OF THE CITY OF CHESAPEAKE
Stephen J. Telfeyan, Judge

Samantha Offutt Thames, Senior Appellate Attorney (Virginia
Indigent Defense Commission, on briefs), for appellant.

David A. Stock, Senior Assistant Attorney General (Jason S.
Miyares, Attorney General, on brief), for appellee.

Following a jury trial, the circuit court convicted Ben Matthew Wynkoop of second-degree

murder, use of a firearm in the commission of a murder, armed burglary with the intent to commit

assault and battery, violation of a protective order while armed, assault of a person protected by a

protective order, and possession of a firearm while subject to a protective order. On appeal,

Wynkoop first argues that the circuit court erred by admitting into evidence the entirety of a 911 call

recording. Second, he argues that convicting him of both possession of a firearm while subject to a

protective order and violation of a protective order while armed violates his constitutional

protections against double jeopardy. Finally, he asserts that the evidence was insufficient to support

his convictions for murder and armed burglary. For the following reasons, we disagree and affirm

the decision of the circuit court. We remand for correction of the sentencing order.

---

* This opinion is not designated for publication. *See* Code § 17.1-413(A).

# I. Background

"On appeal, we state the facts in the light most favorable to the Commonwealth," the prevailing party below. *Newsome v. Commonwealth*, 81 Va. App. 43, 48 (2024).

Wynkoop was married to Kathryn Dean. Wynkoop had lived with Dean at their home in Chesapeake until March 23, 2022, when Dean obtained a protective order against him. The protective order granted Dean exclusive possession of the home, and it ordered Wynkoop to stay away from both Dean and her son.

Despite the protective order, Wynkoop went to the home on April 4, 2022. A video from a doorbell camera across the street shows Wynkoop run up to the house and kick in the side door of the garage. Dean, who was home at the time, called 911. The recording from that call captured Dean and Wynkoop's interaction. The 911 operator tried to make contact, but he did not get a response. Heavy breathing and a woman groaning can be heard on the recording. Eventually, Dean asked Wynkoop why he was doing this. Dean repeatedly told Wynkoop to leave, but despite Dean's requests, Wynkoop did not leave, and he told her that he just wanted to talk. There was some indecipherable conversation before Dean yelled at Wynkoop to "get the fuck out of [her] house." Dean continued to yell at Wynkoop, and she repeatedly told him to get out. After approximately 2 minutes and 20 seconds, shots were fired. There were two initial shots followed by five more shots seconds later. The call continued for another four minutes. The 911 call operator repeatedly tried to get a response, but there were no other voices. Dean can be heard intermittently gasping for breath and moaning.

Local police were dispatched to the scene in response to the call, and Chesapeake Police Officer Sean Fleming arrived on the scene first. He testified that when he arrived, he observed two shell casings in the driveway and the side door of the garage "splintered as if it had been forced open." Fleming waited for back up to arrive before he entered the garage. After entering, he saw

Dean lying on the floor. Dean had injuries on the left side of her torso, and there was blood pooling under her neck. Fleming could not locate a pulse. He also observed more shell casings on the floor just inside the garage door, and he saw a small black handgun on the ground next to Dean.

Dean did not survive. Assistant Chief Medical Examiner Dr. Wendy Gunther performed an autopsy the next day. She identified six gunshot wounds on Dean's head and torso. One of the gunshots hit Dean in the back. Dean's body also had "superficial blunt trauma" in the form of abrasions and bruises. Dr. Gunther testified that there was methamphetamine in Dean's system at the time of her death.

Following the shooting, Detective James Thomas was assigned to investigate. He travelled to North Carolina on April 4, 2022, to meet with Wynkoop, who was in police custody. After Thomas advised Wynkoop of his *Miranda*[1] rights, Wynkoop agreed to speak with Thomas. When Thomas asked Wynkoop if he knew why they were there, Wynkoop responded that there was some "shit going down" with his wife. He explained some of the issues between him and Dean, including their drug use and prior altercations that led to criminal charges. Wynkoop told the police about the protective order that forced him to leave their residence. He denied having any contact with Dean, except for seeing her in court for the protective order hearing, after the order went into effect.

When asked what he had done that day, Wynkoop told officers he was at "the pond." He also told them he was at his sister's house in Moyock, North Carolina earlier that day. Thomas pushed back on Wynkoop's story, referencing the doorbell camera video and the 911 call recording, telling Wynkoop that he knew Wynkoop was at the home and that he wanted to know what happened.

Wynkoop eventually admitted that he was at the home. He claimed that in the days before the shooting, he had called Dean. He explained that he wanted to talk to Dean for closure.

---

[1] *Miranda v. Arizona*, 384 U.S. 436 (1966).

According to Wynkoop, Dean had agreed he could come over to talk but when he arrived, she would not open the door, so he kicked in the side door on the garage. After he kicked the door in, he saw her reach for her gun, so he grabbed her and told her he was not going to hurt her and that he just wanted to talk. He claimed that they "wrestled" for a little bit before he let her go and started walking to the door. He said that Dean told him she hated him and pointed the gun at him. He said he turned around, saw her move, and he shot her. He told the detective he threw the gun in a field.

Eventually, the police arrested Wynkoop and transported him back to Chesapeake. He was indicted for first-degree murder, use of a firearm in the commission of a murder, armed burglary with the intent to commit murder, assault or battery of a person protected by a protective order, violating a protective order while knowingly armed with a firearm, possessing a firearm while a protective order is in effect, and use of a firearm in the commission of a felony subsequent offense.

Before trial, Wynkoop asked the court to amend the 911 call recording and admit into evidence only the first 2 minutes and 30 seconds of the recording. Noting that the latter portion of the recording was just Dean gasping for breath and dying, he argued that it was "extremely prejudicial and not relevant." The circuit court denied the motion and allowed the Commonwealth to play 6 minutes and 22 seconds of the recording.

After the Commonwealth presented its evidence, Wynkoop moved to strike the evidence on multiple grounds. Relevant here, he argued that the evidence was insufficient to establish he killed Dean with malice or willfulness. He pointed out that Dean pulled a firearm and used threatening language, and the evidence did not establish malice. He also argued that the circuit court should strike one of the charges for violation of a protective order. He asserted that a conviction under both statutes would violate double jeopardy protections because the offense under Code § 18.2-308.1:4(B) was a lesser-included offense of Code § 16.1-253.2. The circuit court denied the motions.

- 4 -

Wynkoop then testified on his own behalf. He admitted going to Dean's house while subject to a protective order, and he acknowledged that he took a gun. He testified that he brought the gun because he was afraid that Dean might hurt him. He explained that Dean would not let him in when he knocked, which made him angry because he had driven up from North Carolina to meet her, so he kicked in the side door on the garage.

When he kicked the door in, Dean was sitting on the couch. Wynkoop explained that the initial sounds on the 911 call recording were him and Dean "playing tug-of-war" over her purse, which is where he knew she kept her gun. He claimed that she told him if he would not leave, she was "going to make [him] leave." He grabbed for the purse to prevent her from grabbing her gun. Despite his efforts, he stated that she managed to get the gun out and point it at him. He backed away, and she started to get up to "come at" him. Dean disabled the safety on her gun. As she did that, he fell backwards over a recliner, unholstered his gun, and started shooting as he got up and ran for the door. He said that he did not mean to shoot her, and he did not think he had hit her. He shot only because he thought she was going to kill him. He acknowledged that he did not call for help and that he disposed of the firearm.

After Wynkoop finished testifying, he rested his case. He made a renewed motion to strike the evidence, again arguing that he did not act with malice. Instead, he argued that the evidence established that he was scared Dean was going to kill him and that he "discharged his weapon to prevent that from happening and in defense of himself." He also renewed his argument that the separate charging of the two offenses for violation of a protective order violated double jeopardy. The circuit court again denied the motions.

Following deliberations, the jury found Wynkoop guilty of second-degree murder, use of a firearm in the commission of a murder, burglary with the intent to commit assault and battery while

armed, assault of a person protected by a protective order, violating a protective order while armed with a deadly weapon, and possessing a firearm while a protective order is in effect.[2]

After the trial, Wynkoop filed a motion to set aside the conviction for burglary with the intent to commit assault and battery. He argues that the evidence shows that he went to the home with the intent to talk to Dean and that he acted only after Dean pulled out her own gun. The circuit court denied the motion. It sentenced Wynkoop to a total time of 88 years with 20 years suspended. Wynkoop now appeals.

## II. ANALYSIS

A. *The 911 call recording was properly admitted into evidence.*

On appeal, Wynkoop argues that the circuit court erred by admitting into evidence 6 minutes and 22 seconds of the 911 call recording. He asserts that the circuit court should have amended the exhibit and admitted only the first 2 minutes and 30 seconds because the latter portion of the recording was unduly prejudicial.[3]

"On appeal, this Court 'reviews a trial court's ruling admitting or excluding evidence for abuse of discretion.'" *Church v. Commonwealth*, 71 Va. App. 107, 122 (2019) (quoting *Payne v. Commonwealth*, 292 Va. 855, 866 (2016)). "Applying this standard, 'we do not substitute our judgment for that of the trial court. Rather, we consider only whether the record fairly supports the trial court's action.'" *Warren v. Commonwealth*, 76 Va. App. 788, 802 (2023) (quoting *Satterwhite v. Commonwealth*, 56 Va. App. 557, 563 (2010)). "Only when reasonable jurists could not differ

---

[2] Additionally, the jury found Wynkoop guilty of a second use of a firearm in the commission of a felony charge. But the circuit court granted Wynkoop's motion to set aside that conviction, and it is not at issue on appeal.

[3] Wynkoop also argues that the recording was cumulative of other evidence. This argument is not preserved because he did not make it below. *See* Rule 5A:18 ("No ruling of the trial court . . . will be considered as a basis for reversal unless an objection was stated with reasonable certainty at the time of the ruling . . . ."). Thus, we do not consider it.

can we say an abuse of discretion has occurred." *Commonwealth v. Barney*, 302 Va. 84, 94 (2023) (quoting *Grattan v. Commonwealth*, 278 Va. 602, 620 (2009)).

A court may exclude relevant evidence if it is "substantially outweighed by . . . the danger of unfair prejudice." Va. R. Evid. 2:403(a)(i). The "responsibility for balancing the competing considerations of probative value and prejudice rests in the sound discretion of the trial court." *Walker v. Commonwealth*, 302 Va. 304, 320 (2023) (quoting *Ortiz v. Commonwealth*, 276 Va. 705, 715 (2008)). "'[U]nfair prejudice' refers to the tendency of some proof to inflame the passions of the trier of fact, or to invite decision based upon a factor unrelated to the elements of the claims and defenses in the pending case." *Id.* (alteration in original) (quoting *Lee v. Spoden*, 290 Va. 235, 251 (2015)). "The fact that evidence is highly prejudicial to a party's claim or defense, in and of itself, 'is not a proper consideration in applying the balancing test.'" *Conley v. Commonwealth*, 74 Va. App. 658, 673 (2022) (quoting *Fields v. Commonwealth*, 73 Va. App. 652, 672 (2021)). Indeed, "all probative direct evidence generally has a prejudicial effect to the opposing party." *Walker*, 302 Va. at 320 (quoting *Lee*, 290 Va. at 251). Instead, "relevant evidence will only be excluded if its prejudicial nature *substantially* outweighs its probative value." *Conley*, 74 Va. App. at 673.

Here, we find that the circuit court did not abuse its discretion in balancing the probative value with any undue prejudice. Though Wynkoop contends that the recording is relevant only as "evidence of a person dying," the recording is also probative of Wynkoop's intent. Though he claims he acted in a heat of passion and that Dean was the aggressor, the recording establishes that he shot her multiple times and then left her dying on the floor, without calling for help, as he fled the scene. Though the recording is, as Wynkoop points out, a recording of someone's final moments, the sounds are difficult to make out, and the recording does not rise to a level that inflames the passions of the jury such that it renders the jury unable to make a rational evaluation

of the evidence.  *See, e.g.*, *Fields*, 73 Va. App. at 673 (listing "particularly graphic crime scene or autopsy photos" as "[c]ommon examples" of unfairly prejudicial evidence).  Moreover, a defendant is not permitted to sanitize the evidence.  *See Burnette v. Commonwealth*, 60 Va. App. 462, 485 (2012) (noting that a defendant cannot sanitize the evidence or preclude the Commonwealth from introducing photographs of a dead victim even though they are gruesome).  We find, therefore, that the circuit court did not err by admitting the latter portion of the 911 recording into evidence.

B.  *Conviction under both Code §§ 16.1-253.2 and 18.2-308.1:4 does not violate double jeopardy protections.*

Wynkoop argues that convicting him under both Code § 18.2-308.1:4(B) and Code § 16.1-253.2 violates double jeopardy.  Specifically, he argues that Code § 18.2-208.1:4(B) is a lesser-included offense of Code § 16.1-253.2 and that he cannot be convicted under both statutes.

"The Fifth Amendment to the Constitution of the United States declares that no person shall 'be subject for the same offence to be twice put in jeopardy of life or limb.'"  *Severance v. Commonwealth*, 295 Va. 564, 571-72 (2018) (quoting U.S. Const. amend. V).  Among other things, this prohibition "protects against multiple punishments for the same offense."  *Commonwealth v. McBride*, 302 Va. 443, 452 (2023) (quoting *Stephens v. Commonwealth*, 263 Va. 58, 62 (2002)).  "An appellate court reviews de novo the abstract legal question of 'whether "multiple punishments have been imposed for the same offense in violation of the double jeopardy clause."'"  *Davis v. Commonwealth*, 79 Va. App. 123, 136 (2023) (quoting *Commonwealth v. Gregg*, 295 Va. 293, 296 (2018)).

Where, as here, a defendant is charged in a single-trial setting, "the role of the constitutional guarantee is limited to assuring that the court does not exceed its legislative authorization by imposing multiple punishments for the same offense."  *Gregg*, 295 Va. at 298 (quoting *Blythe v. Commonwealth*, 222 Va. 722, 725 (1981)).  In determining whether multiple punishments for a

- 8 -

single transaction violates double jeopardy, "the controlling factor is legislative intent." *Id.* (quoting

*Kelsoe v. Commonwealth*, 226 Va. 197, 199 (1983)). "The legislature 'may determine the

appropriate "unit of prosecution" and set the penalty for separate violations.'" *Johnson v.*

*Commonwealth*, 292 Va. 738, 741 (2016) (quoting *Jordan v. Commonwealth*, 2 Va. App. 590, 594

(1986)). "Where a legislature intends to impose multiple punishments for the same course of

conduct, the imposition of multiple punishments does not violate the Constitution." *Payne v.*

*Commonwealth*, 52 Va. App. 120, 125 (2008). "It is judicial punishment in excess of legislative

intent which offends the double jeopardy clause." *Johnson*, 292 Va. at 741 (quoting *Shears v.*

*Commonwealth*, 23 Va. App. 394, 401 (1996)).

Wynkoop asks us to apply the *Blockburger* test to find that conviction under both offenses

violates double jeopardy protections. But the *Blockburger* test, established in *Blockburger v. United*

*States*, 284 U.S. 299 (1932), "is simply a 'rule of statutory construction' used to inform the

constitutional issue." *Gregg*, 295 Va. at 298 (quoting *Whalen v. United States*, 445 U.S. 684, 691

(1980)). This rule assumes that the General Assembly "ordinarily does not intend to punish the

same offense under two different statutes." *Id.* (quoting *Whalen*, 445 U.S. at 692). But before we

apply the *Blockburger* test, "we first consider whether 'the legislative intent is clear from the face of

the statute or the legislative history,' and if so, then 'the *Blockburger* rule is not controlling.'" *Id.* at

298-99 (quoting *Andrews v. Commonwealth*, 280 Va. 231, 284 (2010)).

The General Assembly will, on occasion, expressly provide "that a prosecution under a

particular Code provision does not foreclose a prosecution under a different statute. These

provisions manifest a clear legislative intent that prosecution for one crime does not foreclose

prosecution for another crime, however similar or even identical that crime might be." *Id.* at 299.

On other occasions, the General Assembly will "foreclose multiple prosecutions under separate

statutes." *Id.* at 300. Thus, the first step in our analysis is to consider the plain text of the statutes.

Code § 16.1-253.2(B) provides,

> In addition to any other penalty provided by law, any person who, while knowingly armed with a firearm or other deadly weapon, violates any provision of a protective order with which he has been served issued pursuant to § 16.1-253.1, 16.1-253.4, 16.1-278.14, or 16.1-279.1 or subsection B of § 20-103 is guilty of a Class 6 felony.

Code § 18.2-308.1:4(B) provides in relevant part that "it is unlawful for any person who is subject to a protective order entered pursuant to § 16.1-279.1 or 19.2-152.10 . . . to knowingly possess any firearm while the order is in effect."

This Court has previously considered the language in Code § 16.1-253.2(B) in *Osman v. Commonwealth*, 76 Va. App. 613 (2023). There we considered whether the court was limited by the penalties listed in Code § 16.1-253.1 or whether the court could also punish under a different statute. *Osman*, 76 Va. App. at 646. We found that "nothing in [Code § 16.1-253.2(B)] precludes the Commonwealth from charging appellant for other criminal offenses under different sections of the Virginia Code." *Id.* at 648. The "very first words" in subsection B of Code § 16.1-253.2 state "[i]n addition to any other penalty provided by law." *Id.* at 646 (alteration in original) (quoting Code § 16.1-253.2(B)). Thus, the penalties are "by their plain and unambiguous language, *additional* to 'any other penalty provided by law.'" *Id.* Thus, the plain language of the statute demonstrates the General Assembly's intent to permit multiple punishments. Likewise, there is nothing in Code § 18.2-308.1:4(B) that provides that any penalties under that code section are exclusive. We are bound by the holding in *Osman*. *See Drexel v. Commonwealth*, 80 Va. App. 720, 738 n.5 (2024) ("[U]nder the interpanel accord doctrine, a panel of this Court is bound by other panel opinions of the Court."). Thus, we find that conviction under both Code § 18.2-308.1:4(B) and Code § 16.1-253.2(B) does not violate the double jeopardy clause.

C. *The evidence was sufficient to support Wynkoop's convictions.*

### 1. Standard of Review

"When an appellate court reviews the sufficiency of the evidence underlying a criminal conviction, its role is a limited one." *Commonwealth v. Garrick*, 303 Va. 176, 182 (2024). On review, "[t]he only 'relevant question is . . . whether *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Id.* (alterations in original) (quoting *Barney*, 302 Va. at 97). In answering this question, we presume the ruling of the circuit court is correct and it will not be disturbed "unless it is plainly wrong or without evidentiary support." *Jennings v. Commonwealth*, 65 Va. App. 669, 681 (2015) (quoting *Commonwealth v. Miller*, 273 Va. 540, 551 (2007)).

### 2. Malice

Wynkoop asserts that the evidence was insufficient to sustain his conviction for second-degree murder because the Commonwealth did not establish that he acted with malice. He contends that he acted in the heat of passion as a response to the threat posed to him by Dean, which he contends negates any malicious intent.[4] We disagree.

"In Virginia, every unlawful homicide is presumed to be murder of the second degree." *Tizon v. Commonwealth*, 60 Va. App. 1, 10-11 (2012) (quoting *Pugh v. Commonwealth*, 223 Va. 663, 667 (1982)). "Second-degree murder . . . is defined as a malicious killing." *Diaz v. Commonwealth*, 80 Va. App. 286, 313 (2024) (quoting *Woods v. Commonwealth*, 66 Va. App. 123, 131 (2016)).

---

[4] In the court below, Wynkoop did not expressly argue that he acted in a heat of passion. Instead, his argument used self-defense language. Even so, despite the use of different terms, the substance of his argument is similar. Thus, we assume without deciding that Wynkoop's heat of passion argument is properly preserved.

Malice is "the doing of a wrongful act intentionally, or without just cause or excuse, or as a result of ill will." *Meade v. Commonwealth*, 74 Va. App. 796, 813 (2022) (quoting *Watson-Scott v. Commonwealth*, 298 Va. 251, 255-56 (2019)). It "is evidenced either when the accused acted with a sedate, deliberate mind, and formed design, or committed any purposeful and cruel act without any or without great provocation." *Id.* (quoting *Fletcher v. Commonwealth*, 72 Va. App. 493, 507 (2020)). It can be shown "by words, or inferred from acts and conduct which necessarily result in injury." *Burkeen v. Commonwealth*, 286 Va. 255, 259 (2013) (quoting *Dawkins v. Commonwealth*, 186 Va. 55, 61 (1947)). Likewise, it can be inferred "from the deliberate use of a deadly weapon." *Palmer v. Commonwealth*, 71 Va. App. 225, 237 (2019) (quoting *Doss v. Commonwealth*, 23 Va. App. 679, 686 (1996)). Whether malice exists is a question of fact, and it "may be proved by circumstantial evidence." *Id.* (quoting *Canipe v. Commonwealth*, 25 Va. App. 629, 642 (1997)).

By contrast, "[h]eat of passion refers to the *furor brevis* which renders a man deaf to the voice of reason." *Dandridge v. Commonwealth*, 72 Va. App. 669, 681 (2021) (quoting *Woods*, 66 Va. App. at 131). "It excludes malice when provocation reasonably produces fear or anger that causes one to act on impulse without conscious reflection." *Diaz*, 80 Va. App. at 314 (quoting *Woods*, 66 Va. App. at 131). "Malice and heat of passion cannot coexist." *Id.* (quoting *Woods*, 66 Va. App. at 131).

The evidence here amply supports the jury's conclusion that Wynkoop acted maliciously and not in the heat of passion. Dean had a protective order against Wynkoop that granted her exclusive use of the home and ordered Wynkoop to stay away from her. He chose to violate the protective order and go to Dean's home. The protective order also barred Wynkoop from possessing a firearm, which Wynkoop likewise chose to ignore. Wynkoop admitted to detectives that he wrestled with Dean almost immediately upon entering the garage. And Wynkoop ignored Dean's repeated requests to leave her home. Additionally, malice can be inferred from Wynkoop's

- 12 -

use of a deadly weapon; Wynkoop fired seven shots at Dean, one of which hit her in the back. *See Watson-Scott*, 298 Va. at 258 (noting that "[i]t is patently obvious that firing multiple shots" from a firearm is the definition of malice).

Wynkoop contends that malice requires an act "without great provocation." He argues that the threat from Dean, who was armed, angry, and had recently consumed illegal substances, was "such a great provocation" as to cause Wynkoop to act in a heat of passion. But the only evidence that Dean was the first to show a weapon came from Wynkoop, and the jury was free "to disbelieve the self-serving testimony of the accused and to conclude that the accused is lying to conceal his guilt." *Washington v. Commonwealth*, 75 Va. App. 606, 616 (2022) (quoting *Flanagan v. Commonwealth*, 58 Va. App. 681, 702 (2011)).

Additionally, we cannot say that any threat from Dean was a *reasonable* provocation. Despite a protective order, Wynkoop broke into Dean's home armed with a deadly weapon, and, by his own admission, struggled with her. She was entitled to defend herself if necessary. *See Hines v. Commonwealth*, 292 Va. 674, 679 (2016) (noting that a homeowner assaulted in their own home has the right to use force to repel the attacker); *Lienau v. Commonwealth*, 69 Va. App. 254, 274 (2018) (same). Though Dean was upset and screaming in the 911 call recording, she repeatedly asked Wynkoop to leave, and he did not. Given the totality of the evidence, a reasonable fact finder could conclude that Wynkoop acted with malice and that he did not act in a heat of passion. The evidence was therefore sufficient to sustain his conviction for second-degree murder.[5]

---

[5] Wynkoop also challenges his conviction for the use of a firearm in the commission of a murder on the grounds that the evidence was insufficient to sustain the underlying murder conviction. *See Jay v. Commonwealth*, 275 Va. 510, 527 (2008) ("Under the plain language of Code § 18.2-53.1, there can be no conviction for use or attempted use of a firearm when there has been no commission of one of the predicate offenses enumerated in that statute."). Because we affirm Wynkoop's murder conviction, we likewise affirm his use of a firearm conviction.

3. Intent to Commit Assault and Battery

Wynkoop argues that the evidence was insufficient to support his conviction for armed burglary with the intent to commit assault and battery. He contends that the evidence did not establish that he entered Dean's home with the intent to commit assault and battery. We disagree.

An individual may be guilty of armed burglary if that "person in the . . . daytime breaks and enters . . . a dwelling house" with "intent to commit assault and battery" and "was armed with a deadly weapon." Code §§ 18.2-90, -91.[6] "Because intent is a 'state of mind,' it 'may be proved by a person's conduct or by his statements.'" *Fletcher*, 72 Va. App. at 506 (quoting *Barrett v. Commonwealth*, 210 Va. 153, 156 (1969)). And it "may, *and often must*, be inferred from the facts and circumstances in a particular case." *Commonwealth v. Perkins*, 295 Va. 323, 330 (2018) (quoting *Burton v. Commonwealth*, 281 Va. 622, 627 (2011)). "[W]hen an unlawful entry is made into a dwelling of another, the presumption is that the entry was made for an unlawful purpose, and the specific intent with which such entry was made may be inferred from the surrounding facts and circumstances." *Vincent v. Commonwealth*, 276 Va. 648, 653 (2008) (quoting *Ridley v. Commonwealth*, 219 Va. 834, 836 (1979)).

Here, Wynkoop went to Dean's home and kicked in the door. He did so despite a protective order expressly prohibiting contact with Dean and giving her exclusive use of the home. Thus, there is a presumption that this unlawful entry was for an unlawful purpose. Wynkoop admitted that he was angry with Dean because of the circumstances of the protective order and their separation. The 911 call recording begins with the sounds of a struggle between Dean and Wynkoop, and Wynkoop himself told detectives that after kicking in the door he immediately

---

[6] Wynkoop was initially indicted for armed burglary with the intent to commit murder under Code § 18.2-90. The jury, however, convicted him of armed burglary with the intent to commit assault and battery, which is set out in Code § 18.2-91. The sentencing order incorrectly states that Wynkoop was convicted under Code § 18.2-90. Thus, we remand the case to the circuit court for correction of the sentencing order.

grabbed her and that there was a struggle. Dean can be heard asking Wynkoop why he was doing this. From this evidence, a reasonable fact finder could conclude that Wynkoop broke into Dean's home with the intent to commit assault and battery. Though Wynkoop claims he just went to talk with Dean, the "fact finder was entitled to discount these self-serving statements or view them as an effort to conceal his guilt." *Jones v. Commonwealth*, 279 Va. 295, 300 (2010). Thus, the evidence was sufficient to sustain the conviction, and the circuit court did not err in denying his motion to set aside the verdict.

## III. CONCLUSION

For these reasons, the circuit court's judgment is affirmed. We remand, however, for the circuit court to correct the sentencing order to reflect Wynkoop's conviction for statutory burglary with the intent to commit assault and battery under Code § 18.2-91 rather than Code § 18.2-90.

*Affirmed and remanded.*